ZIMMERMAN REED LLP
Christopher P. Ridout (SBN 143931)
  E-mail: christopher.ridout@zimmreed.com
2381 Rosecrans Ave., Suite 328
Manhattan Beach, CA 90245
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

THE LAW OFFICE OF BEN GUBERNICK
Benjamin Gubernick (SBN 321883)
  E-mail: ben@gubernicklaw.com
24 36th Street, Unit B
Manhattan Beach, CA 90266
(734) 678-5169 Telephone

*Attorneys for Plaintiffs*
***Andrea S. Sanders***
***Marshall C. Sanders***

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA S. SANDERS, an individual, MARSHALL C. SANDERS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>LOANCARE, LLC, a Virginia limited liability company; and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO.: 2:18-CV-09376-SJO (RAOx)<br><br>*Assigned to the Honorable S. James Otero*<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Filed concurrently herewith:<br>1. Declaration of Christopher P. Ridout;<br>2. Declaration of Benjamin Gubernick;<br>3. Declaration of Plaintiff Andrea S. Sanders;<br>4. Declaration of Plaintiff Marshall C. Sanders;<br>5. [Proposed] Order.<br><br>Date:            June 19, 2019<br>Time:            10:00 a.m.<br>Courtroom:   10C<br><br>First Removal Notice:       November 2, 2018<br>Amended Removal Notice: November 12, 2018<br>FAC Filed on:       April 2, 2019 |

1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE that** on June 19, 2019 at 10:00 AM, or as soon thereafter as the matter may be heard, in Courtroom 10C of the above-entitled Court, located at First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, Plaintiffs Andrea S. Sanders ("Mrs. Sanders") and Marshall C. Sanders ("Mr. Sanders") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), and any other applicable rule of civil procedure or law, will respectfully move for an order certifying the following proposed classes, or such other classes as the Court determines are just and appropriate, for purposes of pursuing their claims in their First Amended Complaint ("FAC") against Defendant LoanCare, LLC ("Defendant" or "LoanCare").

With respect to Plaintiffs' claims arising from Defendant's alleged violations of California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code Section 1788 *et. seq.* (the "RFDCPA" or "Rosenthal Act") and Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.* (the "UCL"), Plaintiff proposes certification of the following class (referred to herein as "the Class"):

> **The Class**: All borrowers of California residential mortgage loans who, during the Class Period, were charged an Online Payment Fee by LoanCare and whose loans were past-due at the time the Online Payment Fee was assessed.

With respect to Defendant's alleged violation of the RFDCPA, Plaintiff also proposes certification of the following sub-class (referred to herein as "the Elder Abuse Sub-Class"):

> **The Elder Abuse Sub-Class**: All borrowers of California residential mortgage loans who, during the Class Period, were charged an Online Payment Fee by LoanCare and whose loans were past-due at the time the Online Payment Fee was assessed and who were at least 65 years of age at the time the Online Payment Fee was assessed.

The Class Period starts on the earliest date of the statute of limitations for each claim—October 3, 2014 for the UCL, and October 3, 2017 for the RFDCPA.

Specifically excluded from the proposed classes are: (a) any Defendant, person, firm, trust, corporation, officer, director, or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any Defendant, and any current employee of any Defendant; (b) all persons who make a timely election to be excluded from the proposed classes; (c) the judge(s) to whom this case is assigned and any immediate family members thereof; and (d) the legal representatives, heirs, successors-in-interest or assigns of any excluded party.

Plaintiffs move for the following persons to be named class representatives under Fed. R. Civ. P. 23(g)(1): Andrea S. Sanders and Marshall C. Sanders.

Plaintiffs also move for the following counsel to be appointed class counsel under Fed. R. Civ. P. 23(g)(1): Christopher P. Ridout of Zimmerman Reed LLP and Benjamin Gubernick of The Law Office of Ben Gubernick.

To the extent the Court disagrees with any of the above-stated proposed definitions for the proposed classes or any Class Period, Plaintiffs move the Court to redefine or modify those definitions, as such determinations are within the Court's discretion. Fed. R. Civ. P. 23(c)(4)(B) and (c)(5). Further, the Court has the authority to certify certain issues, but not others. Fed. R. Civ. P. 23(c)(4).

This Motion is based on the following Memorandum of Points and Authorities and the following declarations filed concurrently with this Motion:

1.     Declaration of Christopher P. Ridout in Support of Plaintiffs' Motion for Class Certification;

2.     Declaration of Benjamin Gubernick in Support of Plaintiffs' Motion for Class Certification;

2.     Declaration of Plaintiff Andrea S. Sanders in Support of Plaintiff's Motion for Class Certification;

3.     Declaration of Plaintiff Marshall C. Sanders in Support of Plaintiff's Motion for Class Certification;

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

4.     This Motion is also based on all other documents and arguments submitted in support of this Motion, and upon any arguments that may be presented during the hearing of this matter.

Unless otherwise noted, all Exhibits referenced in the supporting Memorandum of Points and Authorities are to the documents attached to the Declaration of Christopher P. Ridout in Support of Plaintiff's Motion for Class Certification ("Ridout Decl.") and designated as "Ex." therein.

The undersigned also certifies that pursuant to Local Rule 7-3, counsel for Plaintiffs attempted to conduct meaningful meet and confer efforts regarding the various issues addressed in this Motion. Declaration of Benjamin Gubernick in Support of Plaintiff's Motion for Class Certification ("Gubernick Decl.") at ¶¶ 2-9. Although LoanCare declined to participate in these efforts, counsel for Defendant has repeatedly stated that LoanCare intends to hold Plaintiffs to their burden of proving all the requirements for class certification. *Id.* at ¶¶ 5, 9. This motion is therefore necessary. Further, because of Plaintiffs' burdens under Fed. R. Civ. P. 23, and the Court's dual responsibility to ensure that class certification requirements are satisfied even in the event of any agreement of the parties (as is often the case when certification of a settlement class is sought), Plaintiffs' supporting memorandum references each element of Fed. R. Civ. P. 23(a) and 23(b)(3) and shows that each is satisfied.

Respectfully submitted,

Date: May 6, 2019            By:    /s/ Benjamin Gubernick
                                    Benjamin Gubernick
                                    One of Plaintiffs' attorneys

                                    ZIMMERMAN REED, LLP
                                    Christopher P. Ridout
                                    2381 Rosecrans Avenue, Suite 328
                                    Manhattan Beach, CA 90245
                                    (877) 500-8780 Telephone
                                    (877) 500-8781 Facsimile

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THE LAW OFFICE OF BEN GUBERNICK
Benjamin Gubernick
24 36th Street, Unit B
Manhattan Beach, CA 90266
(734) 678-5169 Telephone

*Attorneys for Plaintiffs*

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................. 1

II.   FACTUAL BACKGROUND................................................................. 2

III.  ARGUMENT ........................................................................................ 5

    A.   LEGAL STANDARD. .................................................................... 6

    B.   RULE 23(A)'S REQUIREMENTS ARE SATISFIED. ............................... 7

        1.   The Numerosity Requirement is met. ................................... 7

        2.   Answers to Common Factual and Legal Questions will Drive this
            Litigation's Resolution......................................................... 8

           i.   Plaintiffs' RFDCPA Claim....................................... 8

                a.   Common proof will establish whether all class members
                    were "debtors." ................................................. 9

                b.   Whether LoanCare engaged in "debt collection activity"
                    is a common question........................................ 9

                c.   LoanCare's status as a "debt collector" is well suited for
                    class determination. ......................................... 10

                d.   Section 1692f(1)'s elements are amenable to common
                    proof. ............................................................. 10

                    a)   Whether the online payment fee is "permitted by
                        law" is a common question. ............................... 11

                    b)   Whether the online payment fees were "expressly
                        authorized" is a common question..................... 12

                    c)   Whether Defendant benefited from the online
                        payment fee is a common question..................... 15

           ii.   Plaintiffs' UCL Claim. ............................................ 15

           iii.  Plaintiffs' Elder Abuse Claim................................... 16

        3.   Plaintiffs' Claims are Typical. .......................................... 16

        4.   Plaintiffs and their Counsel are Adequate. ....................... 18

i

C.   THE PROPOSED CLASSES SATISFY RULE 23(B)(3). ....................................... 19

     1.   Common Questions Predominate. ..................................................... 19

     2.   The Class Action Device is Superior to other Adjudication Methods. ................................................................................... 21

D.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL. ................. 25

IV.   CONCLUSION.................................................................................................. 25

MEMORANDUM OF POINTS AND AUTORITIES ISO MOTION FOR CLASS CERTIFICATION

1

# TABLE OF AUTHORITIES

2

Page(s)

**Cases**

3

4

*Abdullah v. U.S. Sec. Assocs., Inc.*,
5
 731 F.3d 952 (9th Cir. 2013) ............................................................................... 8

6

*Acosta v. Credit Bureau of Napa Cnty.*,
 No. 14-8198, 2015 WL 1943244 (N.D. Ill. Apr. 29, 2015) ........................... 20
7

8

*Allen ex rel. Martin v. LaSalle Bank, N.A.*,
 629 F.3d 364 (3d Cir. 2011) ...................................................................... 11, 24
9

10

*Amchem Prod., Inc. v. Windsor*,
 521 U.S. 591 (1997)...................................................................................... 6, 19
11

12

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
 568 U.S. 455 (2013)...................................................................................... 7, 17
13

14

*Arroyo v. Int'l Paper Co.*,
 No. 17-CV-06211-BLF, 2019 WL 1508457 (N.D. Cal. Apr. 4, 2019)........................... 7
15

16

*Ballard v. Equifax Check Servs., Inc.*,
 158 F. Supp. 2d 1163 (E.D. Cal. 2001) .................................................... 21, 23
17

18

*Ballard v. Equifax Check Servs., Inc.*,
 186 F.R.D. 589 (E.D. Cal. 1999)....................................................................... 21
19

20

*Briseno v. ConAgra Foods, Inc.*,
 844 F.3d 1121 (9th Cir. 2017) .......................................................................... 22
21

22

*Burris v. HSBC Bank USA, Nat'l Ass'n*,
 No. 14-CV-02242, 2014 WL 12772260 (C.D. Cal. Dec. 19, 2014) ................................ 9
23

*Carrizosa v. Stassinos*,
 No. C-05-02280, 2010 WL 4393900 (N.D. Cal. Oct. 29, 2010)..................................... 22
24

25

*Chapman v. First Index, Inc.*,
 796 F.3d 783 (7th Cir. 2015) ............................................................................... 6
26

27

*Chowning v. Kohl's Department Stores, Inc.*,
 735 Fed. Appx. 924 (9th Cir.  2018) ............................................................ 24, 25
28

iii

*Clark v. Capital Credit & Collection Serv.*,
   460 F.3d 1162 (9th Cir. 2006) ...................................................... 10

*Clark v. Superior Court*,
   50 Cal. 4th 605 (2010) ................................................................ 6

*Davidson v. Seterus, Inc.*,
   21 Cal. App. 5th 283 (Ct. App. 2018) ...................................... 9, 10

*Del Campo v. Am. Corrective Counseling Serv., Inc.*,
   718 F. Supp. 2d 1116 (N.D. Cal. 2010) ...................................... 11

*Evankavitch v. Green Tree Servicing, L.L.C.*,
   793 F.3d 355 (3d Cir. 2015) ...................................................... 11

*Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) .................................................... 8

*Flores v. Collection Consultants of California*,
   No. SA CV 14–0771–DOC, 2015 WL 4254032 (C.D. Cal. Mar. 20, 2015) ................ 15

*Fuentes v. AR Resources, Inc.*,
   No. 15-7988, 2017 WL 1197814 (D.N.J. Mar. 31, 2017) ...................................... 13, 15

*Hallet v. Li & Fung, Ltd.*,
   No. 95 CIV. 8917, 1997 WL 621111 (S.D.N.Y. Oct. 6, 1997)...................................... 17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .............................................. 16, 18

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ...................................................... 16

*Irwin v. Mascott*,
   96 F. Supp. 2d 968 (N.D. Cal. 1999)............................................ 20

*Johnson v. CFS II, Inc.*,
   No. 12-CV-01091, 2013 WL 1809081 (N.D. Cal. 2013)............................................ 16

*Karpilovsky v. All Web Leads, Inc.*,
   Case No. 17-C-1307, 2018 WL 3108884 (N.D. Ill. 2018)............................................ 20

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003).......................................................... 23

iv

*Lindblom v. Santander Consumer USA Inc.*,
  No. 1:15-CV-0990, 2018 WL 500347 (E.D. Cal. 2018) ..................................................... 20

*Litty v. Merrill Lynch & Co.*,
  No. CV 14-0425 PA (PJWx), 2015 WL 4698475 (C.D. Cal. Apr. 27, 2015) ................. 7

*Manno v. Healthcare Recovery Grp., LLC*,
  289 F.R.D. 674 (S.D. Fla. 2013) ..................................................................................... 20

*McCollough v. Johnson*,
  637 F.3d 939 (9th Cir. 2011) ........................................................................................... 11

*Medrazo v. Honda of North Hollywood*,
  205 Cal. App. 4th 1 (2012) .............................................................................................. 24

*Meyer v. Portfolio Recovery Assocs., LLC*,
  707 F.3d 1036 (9th Cir. 2012) ......................................................................................... 12

*McWhorter v. Ocwen Loan Servicing, LLC*,
  No. 2:15-CV-01831-MHH, 2017 WL 3315375 (N.D. Ala. August 3, 2017) .......... 11, 15

*Newman v. Checkrite California, Inc.*,
  912 F. Supp. 1354 (E.D. Cal. 1995) ........................................................................... 12, 14

*Orantes-Hernandez v. Smith*,
  541 F. Supp. 351 (C.D. Cal. 1982) .................................................................................... 7

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ............................................................................................. 8

*People ex rel. Kennedy v. Beaumont Investment, Ltd.*,
  111 Cal. App. 4th 102 (2003) .......................................................................................... 23

*Reichert v. National Credit Systems, Inc.*,
  531 F.3d 1002 (9th Cir. 2008) ......................................................................................... 10

*Sanders v. LoanCare LLC*,
  No. 18-CV-09376, 2019 WL 441964 (C.D. Cal. Feb. 1, 2019) ............................ 8, 9, 16

*Schwarm v. Craighead*,
  552 F. Supp. 2d 1056 (E.D. Cal. 2008) ........................................................................... 11

*Som v. Daniels Law Offices*, *P.C.*,
573 F. Supp. 2d 349 (D. Mass. 2008) ............................................................. 12

*Stolicker v. Muller, Muller, Richmond, Harms, Myers, Sgroi, P.C.*,
No. 1:04-CV-733, 2006 WL 3386546 (W.D. Mich. Nov. 22, 2006) ............................ 23

*Tavenner v. Talon Grp.*,
No. C09-1370RSL, 2012 WL 1022814 (W.D. Wash. Mar. 26, 2012) ................... 13, 20

*Thomas v. John A. Youderian Jr., LLC*,
232 F. Supp. 3d 656 (D.N.J. 2017) ............................................................. 12

*Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) ............................................................. 10

*True Health Chiropractic, Inc. v. McKesson Corp.*,
896 F.3d 923 (9th Cir. 2018) ............................................................. 25

*Tuttle v. Equifax Check*,
190 F.3d 9 (2nd Cir. 1998) ............................................................. 12

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) ............................................................. 8, 19

*Vaquero v. Ashley Furniture Indus., Inc.*,
824 F.3d 1150 (9th Cir. 2016) ............................................................. 19

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ............................................................. 7, 8

*West v. Costen*,
558 F. Supp. 564 (W.D. Va. 1983) ............................................................. 12

*Wittman v. CBI, Inc.*,
No. CV 15-105-BLG-SPW-CSO, 2016 WL 1411348 (D. Mont. Apr. 8, 2016) .......... 15

*Wolin v. Jaguar Land Power North America, LLC*,
617 F.3d 1168 (9th Cir. 2010) ............................................................. 19, 22

**Statutes**

12 U.S.C. § 5102 ............................................................. 9

15 U.S.C. § 1692f ............................................................. *passim*

MEMORANDUM OF POINTS AND AUTORITIES ISO MOTION FOR CLASS CERTIFICATION

Cal. Bus. & Prof. Code § 17200 ................................................................ 2, 6, 16

Cal. Bus. & Prof. Code § 17203 ...................................................................... 23

Cal. Civ. Code. § 1788.17 ............................................................................ 8, 23

Cal. Civ. Code. § 1788.2 ............................................................................. 9, 10

Cal. Civ. Code § 1788 ...................................................................................... 6

Cal. Civ. Code § 1761 .................................................................................... 16

Cal. Civ. Code § 3345 ......................................................................... 16, 22, 23

Cal. Civ. Code §§ 1788.62 ............................................................................. 22

Cal. Civ. Code § 328 ...................................................................................... 22

**Rules**

Fed. R. Civ. P. 23 .................................................................................. *passim*

**Regulations**

12 CFR § 226.36 ............................................................................................. 3

12 CFR § 1024.36 ......................................................................................... 12

12 CFR § 1026.7 ........................................................................................... 12

**Other Authorities**

2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012) ............ 8

Black's Law Dictionary 580 (6th ed. 1990) ................................................... 13

Consumer Finance Protection Bureau,
    Compliance Bulletin 2017-01(July 31, 2017) ....................................... 12, 21

MEMORANDUM OF POINTS AND AUTORITIES ISO MOTION FOR CLASS CERTIFICATION

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case hinges on a single question: does the law allow a residential loan servicer to charge past-due, California borrowers a fee to make monthly mortgage payments online? If the answer is 'no,' the borrowers on 75,227 LoanCare-serviced mortgages will be entitled to refunds for the 479,419 online payment fees they paid since October 3, 2014. If the answer is 'yes,' no borrower will receive anything.

This common question predominates over all other issues and will be decided through common proof.  The online payment fee was assessed pursuant to a uniform policy and disclosed to all borrowers. There is no evidence that any deed of trust or promissory note mentions the fee, and the mortgage contracts in LoanCare's portfolio are substantively identical in all ways relevant to this litigation—LoanCare does not even check for express authorization in the deed of trust or promissory note prior to charging the fee. Finally, the federal statutory violation underlying all of Plaintiffs' claims is a strict liability offense. The online payment fee is either legal or it is not.

Either way, Federal Rule of Civil Procedure Rule 23's requirements are satisfied, and the Court can and should decide the matter for all affected California homeowners in one stroke. Numerosity is not subject to serious dispute. Defendant also cannot contest that the named Plaintiffs suffered the same injury as all other class members, and that their injury arose from LoanCare's common course of conduct. Plaintiffs are not subject to any non-frivolous unique defenses, and they and their counsel are competent to prosecute this matter on behalf of the proposed classes. And as just discussed, *essentially all* factual and legal questions will be resolved through class-wide proof and yield class-wide answers. As common questions overwhelm any individual issues in importance, Rule 23(b)(3)'s predominance requirement is satisfied. Class resolution is also plainly superior to flooding the courts with thousands of small-dollar lawsuits.

This Court need not reinvent the wheel. In the last year, two federal trial courts— including one in this Circuit—found certification appropriate (at least for class settlement

purposes) in materially indistinguishable cases. *See* Ex. 1, *Garcia v. Nationstar Mortg., LLC*, No. 2:15-cv-01808-TSZ, Dkt. 99 (W.D. Wash. May 25, 2018) (motion for preliminary approval granted where the defendant residential loan servicer charged borrowers a fee to make payments online and by phone); and Ex. 2, *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-cv-01831-MHH, Dkt. 59 (N.D. Ala. Feb. 6, 2019) (same). This Court should arrive at the same conclusion and certify this matter as a class action.

## II.    FACTUAL BACKGROUND

LoanCare is a residential mortgage servicer, responsible for sending monthly invoices and collecting mortgage payments for 1.2 million residential mortgage loans in the United States. Ex. 3, excerpts from transcript of Fed. R. Civ. P. 30(b)(6) deposition of Peter O'Bryant[1] ("O'Bryant Dep.") at 11:23-12:13.[2]

Residential loan servicers are primarily compensated through a servicing fee paid by the lender. Ex. 4, Wyatt Rep. at ¶ 16. The fees a mortgage servicer may charge to borrowers are listed in the deed of trust and promissory note, the documents that together form the mortgage contract. *Id.* at ¶¶ 18-20. Many fees merely reimburse the servicer for expenses it incurs protecting the lender's interest in the property. *Id.* at ¶ 20. A servicer is also authorized by contract to assess a liquidated damages late fee that approximates the harm caused by a missed payment. *Id.* at ¶ 19. United States mortgage contracts are highly standardized and have been since the 1970s. *Id.* at ¶¶ 22-26.

LoanCare's loan-boarding process does not include reviewing the deed of trust or promissory note to determine what fees are authorized. Ex. 3, O'Bryant Dep. at 49:13-50:1. Instead, LoanCare does nothing more than "spot check" the mortgage contract to make sure the "key components" match the electronic data provided by the lender or prior

---

[1] According to defense counsel, the transcript's reference to the witness as "O'Brien" is incorrect. "O'Bryant" will be used throughout based on counsel's representations.

[2] Technically LoanCare "subservices" most mortgages in its portfolio. Ex. 3, O'Bryant Dep. at 11:23-12:22. This means that although LoanCare performs servicing functions, servicing rights are not formally assigned to LoanCare. *Id.* at 12:1-8. As there are no relevant differences between servicers and subservicers, the term "servicer" is used throughout this motion for simplicity. Ex. 4, Expert Report of Christopher Wyatt ("Wyatt Rep.") at ¶ 6.

servicer. *Id.* at 44:33-46:13. These "key components" include the "[i]nterest rate," "maturity date," the "[borrower's] name," and "things like that." *Id.* at 46:1-8. LoanCare does not review anything besides these "key components" because "mortgage contracts are generally written in similar form and format." *Id.* at 48:20-48:25.

Once LoanCare begins servicing a loan, it sends out a "welcome letter" to the borrower stating that future mortgage payments must be made to LoanCare. Ex. 5; Ex. 3, O'Bryant Dep. at 71:24-72:10. The welcome letter identifies "Special Request Fees" the borrower may be charged for "special services." Ex. 5, at second page. These include an "Online Payment Fee" of "up to $10.00." *Id.* According to the letter, "[t]he actual fee is [sic] charged to a particular customer may be different (or there may be no fee) if guidelines are imposed by state law, agencies (VA, FHA, etc.) or investors." *Id.* In its communications with borrowers, LoanCare has also referred to the online payment fee as a "processing fee," Ex. 3, O'Bryant Dep. at 66:5-67:8, a "one-time payment fee," Ex. 10, and a "convenience fee." Exs. 22, 23. LoanCare's uniform policy is to fully disclose the online payment fee to all borrowers. Ex. 3, O'Bryant Dep. at 66:9-17.

LoanCare's $10 online payment fee has existed since at least 2012. *Id.* at 15:20-16:2. The fee is only charged to borrowers who make a payment during the "grace period," i.e. the 15 days between the payment due date and the date when a late fee can first be assessed. *Id.* at 16:13-25. LoanCare's online payment fee takes advantage of borrowers who do not or cannot make their monthly payments earlier. As one LoanCare representative explained, "today what you're avoiding, if you're paying [the $10 online payment fee] is the $144.05 late fee. So, it's $10 versus that, yes." Ex. 6 at 5:8-13.[3]

Since around 2014 LoanCare has charged a discounted $5 fee for payments made from the 5th through 10th day of the grace period, with the full $10 fee reserved for payments made from the 11th through final day of the grace period. Ex. 3, O'Bryant Dep.

---

[3] Under federal law payments are credited to the date of receipt, meaning that borrowers who, for example, mail a check near the end of the grace period will likely incur a late fee. 12 CFR § 226.36(c). *See also,* Dkt. 14 (LoanCare's motion to dismiss) at 18 (stating that borrowers are purchasing "expedited payment services for which LoanCare charge[s] a fee.")

at 16:21-17:22. LoanCare does not assess a fee for payments made during the first four days of the grace period. *Id.* 16:21-25. LoanCare operates its own online payment system. *Id.* at 21:1-6. It classifies online payment fees it receives as "revenue." Ex. 8, LoanCare's responses to Plaintiffs' interrogatories ("Def. Rogg. Resps.") at Rogg. 5. No portion of the fee is forwarded to any third party. *Id.* at Roggs. 12, 14; Ex. 3, O'Bryant Dep. at 21:7-10. Borrowers who use LoanCare's online payment system must verify their identities. *Id.* at 126:16-21. Since October 3, 2014, LoanCare has received $4,113,131 in online payment fees from borrowers on 75,227 California mortgages. Ex. 9.

Plaintiffs Andrea S. Sanders and Marshall C. Sanders are married Californians who have resided at 10616 Baton Rouge Avenue, a house in Porter Ranch, California, for approximately 20 years. Declaration of Andrea S. Sanders ("Mrs. Sanders Decl.") at ¶ 3. Mrs. Sanders is 72 years old and the Department Chair of Child and Family Education at Antelope Valley College. *Id.* at ¶ 2. Mr. Sanders is 75-year-old attorney in good standing with the California and Arizona state bars. Declaration of Marshall C. Sanders ("Mr. Sanders Decl.") at ¶ 2. In May 2006, Plaintiffs took out a mortgage on their home, secured by a deed of trust and promissory note on which they are co-signatories. *Id.* ¶ 2. *See also*, Ex. 24 (promissory note), and Ex. 25 (deed of trust). In March of 2018, Plaintiffs received a welcome letter from LoanCare informing them that all future payments would have to be made to LoanCare. Ex. 5. Mr. Sanders. Decl. at ¶ 6.

Over the life of their mortgage, Plaintiffs have generally made payments on the last day of the grace period for cashflow reasons. *Id.* at ¶ 4. On March 16, 2018, and April 16, 2018, Mr. Sanders made Plaintiffs' monthly payments on LoanCare's website, and was told that he would be charged an online payment fee. *Id.* at ¶ 7. However, the fee was not ultimately assessed for the March or April payments.[4] *Id.* On May 16, 2018, Plaintiffs were charged—and paid—the $10 fee to make an online payment. *Id.* at ¶ 8; Ex. 10. $10 fees

---

[4]Although the operative First Amended Complaint ("FAC") alleges that Plaintiffs were assessed the online payment fee for March and April 2018 payments and that the fees were later refunded, subsequent discovery revealed that the online payment fees were waived for those two months. Ex. 3, O'Bryant Dep. at 115:6-117:10.

were likewise assessed and paid for online payments made on the last date of the grace period in June, August, October, November, and December of 2018. Mr. Sanders Decl. at ¶ 8; Exs. 11-15. All payments were made from Plaintiffs' joint checking account. Mr. Sanders Decl. at ¶ 8.

After learning that LoanCare charged a fee for online payments, Plaintiffs tried repeatedly to motivate LoanCare to follow the law. Mr. Sanders sent LoanCare letters in April, May, June, and August of 2018 explaining that neither the promissory note nor the deed of trust authorized the online payment fee. Exs. 16-19. He also made multiple phone calls. Mr. Sanders Decl. at ¶ 11. LoanCare, in a letter dated June 1, 2018, claimed that "fees charged in order to process a payment online are convenience fees," and asserted that the fee was legal because it "was clearly disclosed and agreed to prior to submitting the payment." Ex. 20. Defendant further stated it was "unable" to refund the fee. *Id*. In another letter, dated September 27, 2018, LoanCare represented that it had "complet[ed] a thorough investigation" of Plaintiffs' complaints, and would continue assessing the fee. Ex. 21; Ex. 6, 4:1-5:2 ("So once the lawsuit's over and we get sued, until then, you're still paying $10 on the internet.") In response to other borrowers' complaints about the online payment fee, LoanCare has consistently claimed the fee is legal because it is "disclosed and agreed to" on LoanCare's website. Exs. 22, 23.

Plaintiffs filed the instant lawsuit on October 3, 2018. On November 20, 2018, LoanCare's attorneys sent an email to Plaintiffs' counsel claiming that the November 2018 online payment fee was "inadvertently" assessed. Ex. 29. In December 2018, counsel for LoanCare sent two $10 checks to Plaintiffs, one for the November online payment fee, and one for the December fee. Ridout Decl. at ¶ 38. The two $10 checks have not been deposited or cashed. *Id*. Earlier this year, LoanCare "temporally suspended" the online payment fee for California borrowers "[d]epending on the outcome of this case." Ex. 3, O'Bryant Dep. at 69:15-70:6.

## III.   ARGUMENT

Plaintiffs seek to certify the following classes:

**The Class**: All borrowers of California residential mortgage loans who, during the Class Period, were charged an Online Payment Fee by LoanCare and whose loans were past-due at the time the Online Payment Fee was assessed.

**The Elder Abuse Sub-Class**: All borrowers of California residential mortgage loans who, during the Class Period, were charged an Online Payment Fee by LoanCare and whose loans were past-due at the time the Online Payment Fee was assessed and who were at least 65 years of age at the time the Online Payment Fee was assessed.[5]

The class period starts on the earliest statute of limitations date for each claim—October 3, 2017 for Plaintiffs' Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code Section 1788 *et. seq.* (the "RFDCPA" or "Rosenthal Act") claim, and October 3, 2014 for Plaintiffs' Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.* ("UCL") claim. Elder Abuse Sub-Class members seek enhanced statutory RFDCPA statutory damages.[6]

**A.   Legal Standard.**

Rule 23(a) establishes four requirements for class certification: (1) the class must be so numerous that joinder is impracticable; (2) common questions of law or fact exist; (3) the class representatives' claims and defenses are typical of the class; and (4) the class representatives and their counsel will adequately protect absent class members' interests. Fed. R. Civ. P. 23(a); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.* at 614. Rule 23(b)(3)—under which Plaintiffs seek certification here—requires a showing that "questions of law or fact common to class members predominate over any

---

[5] The word "charged" in the proposed definitions means, of course, fees that were paid. If the Court finds the current phrasing at all ambiguous, Plaintiffs would request that the Court modify the class definitions to include only those borrowers for whom "the Online Payment Fee was assessed **and paid**." (Modification in bold). *See Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) (court not bound by the complaint's proposed class definitions).

[6] Enhanced UCL damages are likely unavailable and will not be pursued at trial. *Clark v. Superior Court*, 50 Cal. 4th 605, 614-615 (2010).

questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The party seeking certification bears the burden of demonstrating compliance with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("*Dukes*"). However, at the class certification stage a plaintiff is not required to prove the case on its merits. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

**B.    Rule 23(a)'s Requirements are Satisfied.**

**1.    The Numerosity Requirement is met.**

Rule 23(a)(1) asks whether the proposed classes are "so numerous that joinder of all the class members is impracticable." Fed. R. Civ. P. 23(a); *Arroyo v. Int'l Paper Co.*, No. 17-CV-06211-BLF, 2019 WL 1508457, at *2 (N.D. Cal. Apr. 4, 2019). "There is no numerical cut-off" and "numerosity is presumed where the plaintiff class contains forty or more members." *Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA (PJWx), 2015 WL 4698475, at *3 (C.D. Cal. Apr. 27, 2015).

Here, Defendant has produced an Excel spreadsheet showing that, within the class period, Defendant reaped the benefits of 479,419 separate online payment fees charged to borrowers on 75,227 past-due residential mortgages. Exs. 7, 16; Ridout Decl. at ¶ 15. Although Defendant's 30(b)(6) witness did not know how many borrowers were 65 or older when they paid the fee, Ex. 3, O'Bryant Dep. at 128:17-129:1, the number obviously exceeds forty for both proposed classes. *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.")

2. **Answers to Common Factual and Legal Questions will Drive this Litigation's Resolution.**

The commonality requirement is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists where each class member's claims "depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "[E]ven a single common question will do." *Id.* at 359. "[A] common question is one where 'the same evidence will suffice for each member to make a *prima facie* showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citing 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)). The key inquiry is not whether common questions are *raised*, but rather "whether class treatment will generate common *answers* apt to drive the resolution of the litigation." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quotations omitted) (emphasis original). "It is not necessary that members of the proposed class share every fact in common." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (quotations omitted).

As "commonality cannot be determined without a precise understanding of the nature of the underlying claims," courts look to the elements of the plaintiff's claims to determine if commonality is satisfied. *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014).

i. **Plaintiffs' RFDCPA Claim.**

To prevail on their RFDCPA claim, Plaintiffs will need to show (1) they were "debtor[s]"; (2) the object of "collection activity" arising from a "debt"; (3) that LoanCare is a "debt collector"; and (4) that LoanCare violated a Rosenthal Act provision. *Sanders v. LoanCare LLC*, No. 18-CV-09376, 2019 WL 441964, at *2 (C.D. Cal. Feb. 1, 2019) (Dkt. 14.) Plaintiffs have alleged that the fourth element is satisfied because LoanCare violated 15 U.S.C. § 1692f(1) ("Section 1692f(1)"), a federal Fair Debt Collection Practices Act ("FDCPA") provision incorporated by reference into the Rosenthal Act. Cal. Civ. Code. § 1788.17. *See* FAC at ¶¶ 41-42. These four elements are suited for class-wide resolution.

### a.   Common proof will establish whether all class members were "debtors."

A natural person who owes money to a debt collector "as a result of a transaction in which the natural person acquired … property … primarily for personal or household purposes" is a debtor. Cal. Civ. Code. § 1788.2(d)-(h). Residential mortgage borrowers meet this description. *Davidson v. Seterus, Inc.*, 21 Cal. App. 5th 283, 299 (Ct. App. 2018) ("[O]btain[ing] a mortgage for the purpose of purchasing a personal or family residence … would fall within the literal terms of the Rosenthal Act"); 12 U.S.C. § 5102(9) (defining a "residential mortgage loan" as "any loan primarily for personal, family, or household use that is secured by a mortgage … on a dwelling[.]"). Consequently, whether the residential mortgage borrowers who comprise the proposed classes are "debtors" is a common question with a common answer.

### b.   Whether LoanCare engaged in "debt collection activity" is a common question.

The "debt collection activity" element raises common, dispositive questions for all class members. The RFDCPA limits its definition of "consumer debt" to "money … due or owing," and defines "debt collection" as "any act or practice in connection with the collection of consumer debts." Cal. Civ. Code. § 1788.2(f), (b). Here, Defendant only assesses online payment fees for mortgage payments made during the grace period. Ex. 3, O'Bryant Dep. at 16:21-17:22. Accordingly, all class members' claims depend on a finding that their loans were "due and owing"—and thus, "debt"—once the statement due date passed. *Sanders*, 2019 WL 441964 at *3-4. *See also*, *Burris v. HSBC Bank USA*, *Nat'l Ass'n*, No. 14-CV-02242, 2014 WL 12772260, *5 (C.D. Cal. Dec. 19, 2014) (holding that accounts are not "due or owing" prior to the statement due date). Likewise, no class member can recover anything unless assessing an online payment fee—as Defendant did pursuant to its uniform course of conduct—qualifies as "collection activity." *Sanders*, 2019 WL 441964 at *3-4 (denying LoanCare's motion to dismiss because the RFCPA's definition of "debt collection" is "expansive" and encompasses charging fees for payments

made after the due date). This is enough to establish commonality. *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016) (class certification warranted where "an answer to [a] threshold question [regarding statutory interpretation] would drive the resolution of the litigation").

### c.    LoanCare's status as a "debt collector" is well suited for class determination.

In determining if LoanCare is a "debt collector" under the RFDCPA, the only relevant consideration is LoanCare's class-wide conduct. "[A] debt collector is a person who regularly engages in the act or practice of collecting money … that is due or owing [on consumer debt.]" *Davidson*, 230 Cal. Rptr. 3d at 448 (holding that a mortgage servicer may qualify as a debt collector). LoanCare—a servicer of 1.2 million residential mortgages that has collected millions of dollars in "convenience fees" from past-due borrowers—either fits this objective definition or not; the answer will be the same for all members of the proposed classes.

### d.    Section 1692f(1)'s elements are amenable to common proof.

LoanCare's alleged Section 1692f(1) violation—the predicate offense for Plaintiffs' RFDCPA claim—will be decided on common proof. The FDCPA states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C.§ 1692f, and explicitly identifies as unlawful:

> The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1). The Ninth Circuit has "made clear that the FDCPA is a strict liability statute in that a plaintiff need not prove an error was intentional."[7] *Reichert v. National Credit Systems, Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008) (affirming that the strict liability

---

[7] A "narrow exception to strict liability" exists if a debt collector can prove a violation resulted from a "bona fide error." *Clark v. Capital Credit & Collection Serv.*, 460 F.3d 1162, 1176-77 (9th Cir., 2006). However, Defendant's answer to the FAC does not list the bona fide error defense as an affirmative defense. *See* Dkt. 39.

standard applies to Section 1692f(1) claims). *See also*, *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) ("[Section] 1692f(1) … defines the collection of an unauthorized debt as a *per se* 'unfair or unconscionable' debt collection method.").

While a debt collector may avoid liability under Section 1692f(1) if the challenged fee is "expressly authorized by the agreement creating the debt or permitted by law," 15 U.S.C. § 1692f(1), a plaintiff is not ultimately required to prove a negative. Rather, in the Ninth Circuit **it is the debt collector's burden to show that these exceptions apply**. *McCollough v. Johnson*, 637 F.3d 939, 949-50 (9th Cir. 2011) (summary judgment for plaintiff affirmed where the defendant debt collector "failed to meet its burden" to "produce[] … evidence of express authorization of its fee request" in the agreement creating the debt); *Del Campo v. Am. Corrective Counseling Serv., Inc*. 718 F. Supp. 2d 1116, 1133 (N.D. Cal. 2010) (no exemption from Section 1692f(1) liability because "Defendants do not point to any state law that would permit them to charge a program fee."); *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1080 (E.D. Cal. 2008) ("the debt collector must identify a state law that authorizes the fee."). *See also*, *Evankavitch v. Green Tree Servicing, L.L.C.*, 793 F.3d 355 (3d Cir. 2015) ("The burden of proving a[n] [FDCPA] statutory exception falls on the party seeking to reap the benefit of the exception.").

Similarly, some courts allow debt collectors to escape liability upon a showing that the fee did not benefit the debt collector. *McWhorter v. Ocwen Loan Servicing, LLC*, No.: 2:15-cv-01831-MHH, 2017 WL 3315375, *7 (N.D. Ala. August 3, 2017).

These three defenses can be resolved simultaneously for all class members.

### a)   Whether the online payment fee is "permitted by law" is a common question.

LoanCare has identified two statutes that, it contends, permit it to charge online payment fees to delinquent borrowers. Defendant invokes 12 CFR § 1026.7(a)(6)(ii), a Truth in Lending Act section that regulates the content of monthly statements, and 12 CFR § 1024.36(g)(2), a Real Estate Settlement Procedures Act provision that permits fees for beneficiary notices in some circumstances. Ex. 26, LoanCare's responses to Plaintiffs'

request for admission ("Def. Admis. Resps.") at Admis. 8.[8] "The[se] statute[s] do[] not, however, remotely approach … explicit authorization." *Thomas v. John A. Youderian Jr., LLC*, 232 F. Supp. 3d 656, 763 (D.N.J. 2017). *See also*, *West v. Costen*, 558 F. Supp. 564, 582 (W.D. Va. 1983) (Section 1692f(1)'s "permitted by law [language] … requires an affirmative authorization, not just indulgent silence."); *Som v. Daniels Law Offices, P.C.*, 573 F. Supp. 2d 349, 358 at fn. 7 (D. Mass. 2008) (same); *Newman v. Checkrite California, Inc.*, 912 F. Supp. 1354, 1367-1368 (E.D. Cal. 1995) (defendants must "identify some statute which permits, i.e. authorizes or allows, in however general a fashion, the fees or charges in question.") (Superseded by statute on other grounds); *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2nd Cir. 1998) ("If state law neither affirmatively permits nor expressly prohibits service charges, a service charge can be imposed only if the customer expressly agrees to it in the contract.").

Accordingly, resolving this defense boils down to a single question: is an online payment fee "permitted by law" where the law is silent, or does Section 1692f(1) require—as its plain language suggests and numerous courts have held—a statute that affirmatively authorizes the fee? This question can and should be resolved on a class-wide basis.

### b)   Whether the online payment fees were "expressly authorized" is a common question.

Plaintiffs have pressed Defendant throughout discovery to explain why it believes express authorization is at issue. Defendant insists "OnLine [sic] Payment Fees are authorized" by class members' mortgage contracts. Ex. 8, Def. Rogg. Resps. at Rogg 8. But scrutiny of the facts underlying Defendant's contention reveal the emperor has no clothes—a failure of proof that transforms express authorization into a common question.

---

[8] Defendant also claims the Consumer Financial Protection Bureau ("CFPB") "recognize[s] the propriety" of payment processing fees. Ex. 26, Def. Admis. Resps. at Admis. 8. Not true. A 2017 CFPB compliance bulletin specifically flagged assessing "'convenience' fees for processing consumer payments through a particular channel" as conduct that "May Violate or Risk Violating the FDCPA[.]" Ex. 27, CB 2017-01 at 4 (finding that "mortgage servicers … violated the [FDCPA] when they charged fees for taking mortgage payments over the phone to borrowers whose mortgage instruments did not expressly authorize collecting such fees[.]").

*See, e.g.*, *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (affirming commonality finding because the defendant "did not show a single instance where express consent was given[.]"); *Tavenner v. Talon Grp*., No. C09-1370RSL, 2012 WL 1022814, at *4 (W.D. Wash. Mar. 26, 2012) (in the absence of evidence "that a significant portion" of agreements contain express consent, "the theoretical possibility of individual issues is not enough to outweigh the benefits of common resolution of classwide issues.").

Defendant points to language in Plaintiffs' deed of trust "[securing] performance of any agreement of Borrower to pay fees and charges to Lender whether or not set forth in this Deed of Trust" and "the payment of charges allowed by law[.]" Ex. 8, Def. Rogg. Resps. at Rogg 8. According to LoanCare's 30(b)(6) witness, LoanCare can charge online payment fees to all borrowers because mortgages generally contain "equivalent" language. Ex. 3, O'Bryant Dep. at 80:2-81:10. Yet this provision makes no mention of online payment fees, convenience fees, one-time payment fees, or any other descriptor used by Defendant. LoanCare even concedes that its online payment fee is a "LoanCare website" fee and *not a lender fee*. *Id*. at 93:19-94:2. *See also*, Ex. 4, Wyatt Rep. at ¶ 29. The "payment of charges allowed by law" language is equally unhelpful because the online payment fee violates the FDCPA—and by extension the RFDCPA—*unless it is expressly authorized by the contract or permitted by law*. 15 U.S.C. § 1692f(1); Ex. 4, Wyatt Rep. at ¶ 29. Defendant also cites generally to provisions in Plaintiffs' mortgage contract that address "reasonable costs of collection," "attorneys' fees," and the "time and place of payment." Def. Rogg. Resps. at Rogg 8. However, these provisions are plainly inapposite. *Fuentes v. AR Resources, Inc*., No. 15-7988, 2017 WL 1197814, *13, (D.N.J. Mar. 31, 2017) (finding that "'express' means plain on the face of the document itself, as opposed to implied by other sources external to the agreement" and granting summary judgment to the plaintiff debtor because "the Court cannot find that that the phrase 'collection agency fees' *expressly* authorizes the charging of 'a convenience fee.'" (Emphasis added)). *See also*, Black's Law Dictionary 580 (6th ed. 1990) (defining "express" as "[c]lear; definite;

explicit; plain. ... Made known distinctly and explicitly, and not left to inference."); Ex. 4, Wyatt Rep. at ¶ 29.

As to other class members, LoanCare has stonewalled and refused to produce *any* documents. Ex. 28, Defendant's responses to Plaintiffs' requests for production ("Def. Produc. Resps.") at Produc. 1, 3. Defendant has further refused to "undertake" the "review necessary" to find contractual provisions that it believes expressly authorize the fee. *Id*. at Produc. 1. *See also*, Ex. 8, Def. Rogg. Resps. at Rogg. 4 (same). Instead, LoanCare merely states that "certain" Fannie Mae and Freddie Mac deeds of trust contain the following language: "In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such a fee." *Id*. at Rogg. 8. But this provision *supports* a finding of commonality. Under Section 1692f(1), the inquiry is not whether mortgage contracts *prohibit* LoanCare's online payment fee, but rather whether they *expressly authorize* the fee. Ex. 4, Wyatt Rep. at ¶ 29. The absence of express authorization—which Defendant tacitly concedes by relying on a contract provision that *assumes the absence of express authorization*—ends the analysis.

Moreover, even if Defendant had produced evidence that some mortgage contract somewhere permitted online payment fees in the abstract—and to be clear, it has not—there is no evidence that the *amount* of the fee—$5 or $10, depending on when the fee is paid—is expressly authorized by any class member's contract. 15 U.S.C. § 1692f(1). Defendant's 30(b)(6) witness had no idea how the $10 amount was selected and admitted that the $5 amount was chosen to make the fee more "appealing" to borrowers. Ex. 3, O'Bryant Dep. at 94:20-97:24. There is no indication that the *amount* of the online payment fee has *ever* been rooted in the language of *any* borrower's mortgage contract. LoanCare's failure to "tailor[] [its fees] in such a fashion to make them acceptable under the FDCPA" means that express authorization is not at issue. *Newman v. Checkrite California, Inc*., 912 F. Supp. 1354, 1369 (E.D. Cal, 1995) (Debtor entitled to summary judgment under Section 1692f(1) claim where the debt collector "offer[ed] no basis for

their […] fees," "acknowledged that the amount was somewhat arbitrarily chosen," and "offered no evidence that [the fee] amounts are otherwise authorized by law"),

Finally, even putting aside Defendant's manifest failure to produce evidence, Plaintiff has submitted credible expert testimony establishing that United States residential mortgage contracts were homogenized 50 years ago, and do not contain express authorization for LoanCare's online payment fee. Ex. 4, Wyatt Rep. at ¶¶ 22-28. Defendant can hardly contest the thrust of Mr. Wyatt's expert opinions—after all, it agrees with them. Ex. 3, O'Bryant Dep. at 48:20-25 (LoanCare does not check for express fee authorization because "mortgage contracts are generally written in similar form and format.").

### c)   Whether Defendant benefited from the online payment fee is a common question.

Some courts have recognized a valid defense to a Section 1692f(1) claim where the fee at issue does not "inure" a benefit to the collector. *McWhorter*, 2017 WL 3315375 at *7. The test is whether "the debt collector receives some or all of the fee." *Id.*; *Flores v. Collection Consultants of California*, No. SA CV 14–0771–DOC, 2015 WL 4254032, at *9 (C.D. Cal. Mar. 20, 2015) (no violation where the debt collector merely forwarded a fee to a third-party); *Wittman v. CBI, Inc.*, No. CV 15-105-BLG-SPW-CSO, 2016 WL 1411348, at *4 (D. Mont. Apr. 8, 2016) (same). This is sometimes referred to as the "pass-through defense," *Fuentes*, 2017 WL 1197814 at *7, and according to Defendant this defense is at issue. *See* Dkt. 39, answer to FAC, at 7 (denying that the online payment fee inure a benefit to LoanCare). While it is unclear how Defendant can possibly meet its burden given that the online payment fee is "revenue" that LoanCare keeps for itself, Ex. 8, Def. Rogg. Resps. at Roggs. 5, 12, the outcome will not depend on any specific borrower's circumstances. Common resolution is appropriate.

### ii.   Plaintiffs' UCL Claim.

California's Unfair Competition Law applies to "any unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. Prof. Code § 17200. Here, Plaintiffs are proceeding on the "unlawful" prong. *See* FAC at ¶ 53. To prevail at trial, Plaintiffs will have to show

(1) that assessing online payment fees to borrowers "can properly be called a business practice," *Sanders*, 2019 WL 441964, at *7, and (2) that the business practice violated the RFDCPA. To the extent Defendant disputes the "business practices" element, the matter will be resolved by examining Defendant's uniform course of conduct. Likewise, and as just discussed, all RFDCPA elements are susceptible to common proof. Whether Defendant's actions were "unlawful" can be decided, once, for all class members.

### iii.   Plaintiffs' Elder Abuse Claim.

California law allows for enhanced statutory penalties of "up to three times greater" upon a finding that a violated statute "impose[s] either a fine, or a civil penalty or other penalty, or any other remedy the purpose or effect of which is to punish or deter." Cal. Civ. Code § 3345(b). Enhanced damages may be awarded where "the defendant knew or should have known that his or her conduct was directed to one or more senior citizens[.]" Cal. Civ. Code § 3345(b)(1). A "senior citizen" is a person 65 years or older. Cal. Civ. Code § 1761. RFDCPA statutory damages are eligible for the elder abuse enhancement. *Johnson v. CFS II, Inc.*, No. 12-CV-01091, 2013 WL 1809081, *11-12 (N.D. Cal. 2013).

Here, it is undisputed that LoanCare had actual knowledge of all class members' ages. Ex. 3, O'Bryant Dep. at 126:5-127:11. As a result, the question will be whether, in light of its actual knowledge, LoanCare "knew or should have known that [its] conduct was directed to one or more senior citizens." Cal. Civ. Code § 3345(b)(1). This common question can be resolved simultaneously for all Elder Abuse Sub-Class members.

### 3.   Plaintiffs' Claims are Typical.

Rule 23(a)(3) tests whether "the [legal] claims or defenses of the representative parties" are typical. Fed. R. Civ. P. 23(a)(3). Representative claims are "typical" if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). The inquiry is whether "other [class] members have the same or similar injury, … the action is based on conduct which is not unique to the named plaintiffs, and … other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*,

976 F.2d 497, 508 (9th Cir. 1992). Courts also ask if the proposed class representative is "subject to unique defenses which threaten to become the focus of the litigation." *Id*.

Here, Plaintiffs suffered the exact same injury as all other class members—they were charged an allegedly illegal fee to make a payment online during their mortgage's grace period. It is uncontested that Plaintiffs paid the fee multiple times, and that until LoanCare "suspended" the fee pending this litigation's outcome, it collected the fee from tens of thousands of California borrowers. And as Plaintiffs were over 65 at all times relevant to this litigation, their claims are typical of the Elder Abuse Sub-Class as well.

LoanCare has no potentially meritorious defenses that are unique to Plaintiffs. Although Defendant will surely point out that Plaintiffs knew about the online payment fee and could have hypothetically avoided paying it, the same can be said for all class members. Ex. 3, O'Bryant Dep. at 66:3-17. *See also*, *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1197 (2013) ("fatal similarit[ies]" between class members' claims support certification). In fact, only one of LoanCare's "affirmative defenses and other defenses" is truly individualized: the claim that Plaintiffs have "unclean hands." Dkt. 39, answer to FAC, at 12.  But this "defense" runs headlong into reality. Plaintiffs only sued after numerous attempts to motivate LoanCare to comply with the law. Plaintiffs first explained to Defendant, in writing, that its actions were illegal on April 22, 2018. Ex. 13. Over the next five months, Plaintiffs sent more letters and made phone calls. Exs. 17-19; Mr. Sanders Decl. at ¶ 11. LoanCare responded by steadfastly refusing to correct its behavior. *See, e.g,* Ex. 20 (claiming that LoanCare was "unable" to waive or refund the fee); Ex. 6 (claiming that unless and until Plaintiffs prevail in a lawsuit, "you're still paying $10 on the internet."). Simply put, Plaintiffs are not the ones with unclean hands. *See Hallet v. Li & Fung, Ltd*., No. 95 CIV. 8917, 1997 WL 621111, at *3 (S.D.N.Y. Oct. 6, 1997) ("[T]he court should not disqualify a named plaintiff based upon any groundless, far-fetched defense that the defendant manages to articulate."). Plaintiffs easily satisfy Rule 23's typicality requirement.

### 4.    Plaintiffs and their Counsel are Adequate.

Adequacy—Rule 23(a)'s final requirement—is satisfied where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts must ask "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Here, Plaintiffs and their counsel are adequate.

*First*, neither Plaintiffs nor their counsel have any conflicts of interest with absent class members. Mrs. Sanders Decl. at ¶ 9; Mr. Sanders Decl. at ¶ 17; Ridout Decl. at ¶ 8; Gubernick Decl. at ¶ 16. Plaintiffs also have the same objectives as all class members: putting an end to LoanCare's unlawful pay-to-pay fees and maximizing recovery for LoanCare's past violations. Mrs. Sanders Decl. at ¶ 7; Mr. Sanders Decl. at ¶¶ 13, 16.

*Second*, Plaintiffs have vigorously pursued this action on the proposed classes' behalves and will continue to do so. Plaintiffs have taken an active role in this litigation, including by compiling discovery, sitting for depositions, and consulting with their attorneys. Mrs. Sanders' Decl. at ¶ 6; Mr. Sanders' Decl. at ¶¶ 13-14. Mr. Sanders is also a member in good standing of the California and Arizona state bars, *id*. at ¶ 2, and Mrs. Sanders is a department chair at a California college. Mrs. Sanders Decl. at ¶ 2. Plaintiffs are qualified to protect absent class members' interests.

Plaintiffs have also selected highly-qualified litigators as their attorneys. Ridout Decl. at ¶¶ 1-8; Gubernick Decl. at ¶¶ 10-13. Plaintiffs' counsel regularly engage in litigation involving the statutes at issue here and have the resources necessary to conduct litigation of this nature. *Id*. at ¶ 12; Ridout Decl. at ¶ 8. They have also zealously prosecuted this case from its inception and will continue to do so. *Id*.; Gubernick Decl. at ¶ 14-15. Finally, Zimmerman Reed, LLP is often appointed lead counsel in class actions throughout the country. Ridout Decl. at ¶¶ 2-6. *See also*, Ex. 30.

**C.     The Proposed Classes Satisfy Rule 23(b)(3).**

In addition to Rule 23(a)'s four prerequisites for certification, a proposed class must also fall within one of Rule 23(b) subsections. The present matter is properly certified under Rule 23(b)(3) because common factual and legal questions predominate over all individual issues.

Rule 23(b)(3) exists "to cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997) (quotations omitted). A court can certify a class under Rule 23(b)(3) when it finds that "the questions of law or fact common to class members predominate over any question affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1.     Common Questions Predominate.**

Common questions predominate so long as "one or more of the central issues in the action are common to the class and can be said to predominate[.]" *Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1045 (2016). This is true even if "other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* There is "substantial overlap" between Rule 23(a)(2) commonality and Rule 23(b)(3) predominance. *Wolin v. Jaguar Land Power North America, LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). The Ninth Circuit has repeatedly held that individualized issued related to damages calculation cannot by themselves defeat predominance. *See e.g., Vaquero v. Ashley Furniture Indus., Inc*., 824 F.3d 1150, 1155 (9th Cir. 2016).

As discussed in Section III(B)(2) *supra*, virtually all elements of Plaintiffs' claims hinge on common questions. The only possible individual issue is whether any class member's mortgage contract expressly authorized LoanCare to charge $5 or $10 online payment fees. But this concern is a red herring, as Defendant has produced no evidence

that any loan contains express authorization for online payment fees—LoanCare does not even check for express authorization because residential mortgage contracts are substantively identical. Ex. 3, O'Bryant Dep. at 48:20-25. In short, Defendant cannot show that *any* mortgage contract contains express authorization, much less the "significant portion" of class member agreements needed to defeat predominance. *Tavenner*, 2012 WL 1022814 at *4. *See also*, *Irwin v. Mascott*, 96 F. Supp. 2d 968, 980 (N.D. Cal. 1999) (class certification appropriate because "it is doubtful that in any individual case defendants can produce any evidence [of express authorization]"); Ex. 4, Wyatt Rep. at ¶¶ 27-28.

What is more, Defendant may not speculate its evidentiary shortcomings away by, for example, claiming that some borrowers somewhere "*may* have entered into loan modifications" that authorize online payment fees. Ex. 8, Def. Roggs. Resps. at Rogg. 10 (emphasis added). "[W]here the defendant's objection to class certification fails to set forth specific evidence and instead only makes vague assertions … individualized issues … will not predominate over common questions of law or fact." *Karpilovsky v. All Web Leads, Inc.*, Case No. 17-C-1307, 2018 WL 3108884, at *5 (N.D. Ill. 2018) ("While it is plaintiff's burden to meet the predominance test, opposition to predominance based on theory, not evidence, is not a weighty objection." (internal quotations omitted)). *See also*, *Manno v. Healthcare Recovery Grp., LLC*, 289 F.R.D. 674, 696 (S.D. Fla. 2013) (certification proper where individual issues were "speculative and not supported on the present record.")

A predominance finding is especially warranted here because, prior to this litigation's onset, LoanCare *never* offered express authorization as a justification for its online payment fee. Rather, LoanCare has consistently rested on the legally bankrupt claim that the fee is lawful because it is disclosed, optional, and "agreed to" when borrowers use LoanCare's online payment system. Exs. 16-19, 23-24; Mr. Sanders Decl. at ¶ 12. *See Lindblom v. Santander Consumer USA Inc.*, No. 1:15-CV-0990, 2018 WL 500347, at *5-7 (E.D. Cal. 2018) (rejecting LoanCare's theory as "wholly contrary to [Section 1692f(1)] and its purpose to protect consumers"); *Acosta v. Credit Bureau of Napa Cnty.*, No. 14-8198, 2015 WL 1943244, *4 (N.D. Ill. Apr. 29, 2015) ("It is immaterial that the fee was

optional and fully disclosed"). LoanCare does not even look at borrower mortgage contracts prior to assessing the fee, a practice that falls short of CFPB guidelines. Ex. 27 at 4 (in a section entitled "The Bureau's Expectations," recommending that mortgage servicers "[r]eview underlying debt agreements to determine whether such fees are authorized by the contract.").

As one federal court in this Circuit explained when confronted with similar facts surrounding a Section 1692f(1) class action:

> This court finds [the debt collector's] argument to now require individual proof of express authorization somewhat disingenuous, for at the time [the debt collector] mailed some 1.4 million letters demanding payment of a $20 service charge, it made no effort to establish express authorization on a case by case basis. It certainly had no such evidence in the case of [the named plaintiff]. … Now when faced with refunding the same charges it has collected, [the debt collector] contends that it must establish on a case by case basis that the charges were expressly authorized by individual contracts[.] It appears that [the debt collector] has reaped the benefits of [a] method and now argues that [the] method is wholly inadequate to determine the question of authorization. … The FDCPA is designed to protect consumers from the unscrupulous antics of debt collectors[.] … We must focus on the debt collector's misconduct[.] … By focusing on the conduct of [the debt collector] … the court finds that any potential individual issues will not predominate over issues common to the class.

*Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 598 (E.D. Cal. 1999) ("*Ballard I*"). *See also*, *Ballard v. Equifax Check Servs., Inc.*, 158 F. Supp. 2d 1163, 1175 (E.D. Cal. 2001) ("*Ballard II*") (class-wide summary judgment granted for plaintiff where the defendant debt collector "failed to meet[] its burden of proving its service charges' validity."). To the extent LoanCare now wishes to hang its hat on hypothetical express authorization, the Court should reject Defendant's argument.

**2.    The Class Action Device is Superior to other Adjudication Methods.**

Rule 23(b)(3)'s superiority element is similarly met. Courts must consider the following factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and

21

> nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The Ninth Circuit requires courts to "hew[] closely to the text" of Rule 23(b)(3). *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017) (rejecting the contention that superiority imposes an "administrative feasibility" requirement). Here, each factor supports certification.

*First*, class members' average damages are modest. From October 3, 2014 to the present, borrowers on 75,227 California mortgages paid 479,419 online payment fees totaling $4,113,131. Ex. 9; Ridout Decl. at ¶ 15. This equals to around $54 in actual damages per mortgage.[9] And while class members whose claims accrued on or after October 3, 2017 could potentially recover greater statutory damages under the RFDCPA through individual actions, those damages would be capped at $1,000 for class members under 65, and $3,000 for those 65 or older. *See* Cal. Civ. Code §§ 1788.62(a), 3345(b). As "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1176 ("Forcing individual vehicle owners to litigate their cases, particularly where common issues predominate for the proposed class, is an inferior method of adjudication.").

*Second*, neither Plaintiffs' counsel nor LoanCare's Rule 30(b)(6) witness are aware of any concurrent litigation involving Defendant's online payment fee. Ridout Decl. ¶ 37; Ex. 3, O'Bryant Dep. at 150:16-19.

*Third*, all claims in this putative class action are based on California law and stem from mortgages on California homes. This forum is desirable.

---

[9] Actual damages will be slightly higher for each borrower, as California law mandates assessment of prejudgment interest in these circumstances. Cal. Civil Code § 328(a) ("Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day"); *Carrizosa v. Stassinos*, No. C-05-02280, 2010 WL 4393900, at *4 (N.D. Cal. Oct. 29, 2010) (class members entitled to 7% prejudgment interest on UCL restitution awards).

***Fourth***, manageability presents no obstacle to class certification.

To start with, and as explained above, LoanCare's liability towards all class members will be decided based on common evidence.

Next, damages calculations are straightforward. The RFDCPA incorporates the FDCPA's penalty provisions by reference. Cal. Civil Code § 1788.17. Consequently, class members who paid the online fee from October 3, 2017 onwards will be entitled to a *pro rata* share of a statutory damages award of up to $500,000, 15 U.S.C. § 1692k(a)(2)(B), and actual damages equal to fees paid. 15 U.S.C. § 1692k(a)(1); *Stolicker v. Muller, Muller, Richmond, Harms, Myers, Sgroi, P.C.*, No. 1:04-CV-733, 2006 WL 3386546, *3-4 (W.D. Mich. Nov. 22, 2006) ("[T]he text of § 1692k(a) clearly indicates that the limitation on damages in subpart (a)(2)(B)(ii) only applies to statutory damages."). Statutory Rosenthal Act damages may also be enhanced for Elder Abuse Sub-Class members, as deemed appropriate by the fact finder. Cal. Civ. Code § 3345(b).

Class members who were charged the online payment fee from October 3, 2014 onwards are also entitled to full restitution under the UCL.[10] The UCL provides that "the Court may make such orders or judgments … as may be necessary to restore to any person in interest any money or property … which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203. Restitution orders "compel[] a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144–45 (2003). Full restitution is appropriate where—as here— the violating defendant was prohibited by law from collecting any of the amount paid. *Ballard II*, 158 F. Supp. 2d at 1177 (in a Section 1692f(1) case, holding that "[the defendant] is liable to class members who actually paid a[n] [unlawful] service charge and must pay [UCL] restitution of the amount paid as a service charge, plus pre-judgment interest."). *See also*, *People ex rel. Kennedy v. Beaumont Investment, Ltd*., 111 Cal. App.

---

[10] Restitution for fees paid on or after October 3, 2017 is mutually exclusive with RFDCPA actual damages.

4th 102, 132 (2003) (tenants who were charged rents that exceeded an ordinance were entitled to restitution of all above-ordinance rent money); *Medrazo v. Honda of North Hollywood*, 205 Cal. App. 4th 1, 13-15 (2012) (where a dealership violated a statute requiring discloser of dealer-added charges, class members were entitled under the UCL to a refund of all such charges paid).

LoanCare will no doubt insist that the above UCL damages model will cause "unjust enrichment" because class members will have "receive[d] valuable, beneficial services for free." Dkt. 39 (answer to FAC) at 12. But this concern is unwarranted. According to the "welcome letter" that LoanCare sends to borrowers, *LoanCare only charges a fee to use its online payment system if state law permits it to do so*. Ex. 5, at second page. Indeed, LoanCare's online payment system has always been available for free prior to the fifth day of the grace period, and all California borrowers can currently make payments for free online at any point during the grace period "[d]epending on the outcome of this case." Ex. 3, O'Bryant Dep. at 69:15-70:6. *See also*, *id*. at 96:3-97:4 (admitting that LoanCare's costs for processing an online payment are the same regardless of when the payment is made). Accordingly, the central thesis of LoanCare's objection—that borrowers will receive some sort of windfall if LoanCare is ordered to return "*per se* 'unfair or unconscionable'" fees, *Allen*, 629 F.3d at 368—is factually incorrect.[11]

Finally, the proposed classes are ascertainable. Defendant has already produced an Excel spreadsheet identifying every online payment fee it has collected from a California borrower since October 3, 2014. Ex. 3, O'Bryant Dep. at 22:17-23:19. The spreadsheet includes a unique identifier for the borrower's account, the statement due date, the date the fee was assessed and paid, and the amount of the fee. *Id*. Defendant's Rule 30(b)(6) witness

---

[11] Even if the Court finds that LoanCare's online payment system is a "product" that class members purchased when they paid the fee, *Chowning v. Kohl's Department Stores, Inc*., 735 Fed. Appx. 924, 925 (9th Cir. 2018), its "retail value," *id*., is $0.00. Ex. 4, Wyatt Rep. at ¶¶ 16, 31-33 (explaining that (1) virtually all mortgage servicers offer online payment, and irrespective of whether a fee is charged; (2) servicers benefit when borrowers use online payment systems even if no fee is assessed; and (3) the nominal operating costs for online payment systems are routine business expenses that are factored into the lender servicing fee).

conceded that these borrowers all had past-due balances at the time the fee was assessed and paid. *Id.* at 35:13-37:9. He also agreed that LoanCare's database contains borrower dates of birth, allowing for determination of Elder Abuse Sub-Class membership. *Id.* at 126:25-127:2. For the mortgages LoanCare still services, Defendant can even refund online payment fees by crediting them towards the mortgage principle, allowing for a highly streamlined claims process. *Id.* at 122:23-124-20. And to the extent any issues arise regarding class membership, they can be resolved by referencing the "millions" of data points in LoanCare's business records. *Id.* at 126:22-127:7. Although ascertainability is not required to certify a class, *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929 (9th Cir. 2018), it surely exists here.

**D.   Plaintiffs' Counsel should be Appointed Class Counsel.**

Class Certification under Rule 23 also requires a court to appoint class counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). the Court must consider (1) the work counsel has done in identifying and investigating the claims, (2) counsel's experience in handling class actions and the types of claims asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

As explained above and in counsels' concurrently-filed declarations, these requirements are satisfied. Ridout Decl. ¶¶ 2-8; Gubernick Decl. at ¶¶ 10-16. Accordingly, the Court should appoint Christopher P. Ridout of Zimmerman Reed, LLP, and Benjamin Gubernick of The Law Office of Ben Gubernick as class counsel.

## IV.   CONCLUSION

For the foregoing reasons class certification is warranted.

Respectfully submitted,

Date: May 6, 2019            By:   /s/ Benjamin Gubernick
                                   Benjamin Gubernick
                                   One of Plaintiffs' attorneys

ZIMMERMAN REED, LLP
Christopher P. Ridout
2381 Rosecrans Avenue, Suite 328
Manhattan Beach, CA 90245
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

THE LAW OFFICE OF BEN GUBERNICK
Benjamin Gubernick
24 36th Street, Unit B
Manhattan Beach, CA 90266
(734) 678-5169 Telephone

*Attorneys for Plaintiffs*

MEMORANDUM OF POINTS AND AUTORITIES ISO MOTION FOR CLASS CERTIFICATION