**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** CV 2:18-09376 SJO (RAOx)        **DATE:** March 24, 2020

**TITLE:**    Andrea S. Sanders, et al. v. LoanCare, LLC

======================================================================
**PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Victor Paul Cruz | Not Present |
| Courtroom Clerk | Court Reporter |

**COUNSEL PRESENT FOR PLAINTIFF:**        **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                     Not Present

======================================================================
**PROCEEDINGS (in chambers):  ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT** [Docket No. 80]

This matter is before the Court on Plaintiffs Andrea S. Sanders' and Marshall C. Sanders' (collectively, "Plaintiffs" or "Sanders") Unopposed Renewed Motion for Preliminary Approval of Amended and Restated Settlement Agreement ("Renewed Motion"), filed February 6, 2020. (Renewed Motion, ECF No. 80.)  Defendant LoanCare, LLC ("LoanCare") does not oppose the Motion and filed its Response in Support of Renewed Motion ("Response") on February 6, 2020. (Response, ECF No. 86.)   The Court found this matter suitable for disposition without oral argument and vacated the hearing set for March 9, 2020.  *See* Fed. R. Civ. P. 78(b); ECF No. 87. For the following reasons, the Court **GRANTS** Plaintiffs' Renewed Motion.

I.     FACTUAL AND PROCEDURAL HISTORY

This putative class action centers on allegations that LoanCare charged consumers Online Payment Fees despite receiving no express authorization from consumers' deeds of trust or promissory notes securing their residential mortgages.  (*See generally* First Amended Compl. ("FAC"), ECF No. 37.)  Plaintiffs assert that LoanCare's fees violate California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal") and California's Unfair Competition Law ("UCL"). (FAC ¶ 44.)

   A.     Allegations in Plaintiffs' First Amended Complaint

Plaintiffs' First Amended Complaint, filed April, 2, 2019, alleges the following:

Defendant LoanCare is a Virginia limited liability company with a principal place of business in Virginia Beach, Virginia.  (FAC ¶ 9.) Lead Plaintiffs are citizens of California and reside in Northridge, CA.  (FAC ¶ 7-8.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **Priority** | ____ |
| **Send** | ____ |
| **Enter** | ____ |
| **Closed** | ____ |
| **JS-5/JS-6** | ____ |
| **Scan Only** | ____ |

**CASE NO.:**  <u>CV 2:18-09376 SJO (RAOx)</u>          **DATE:** <u>March 24, 2020</u>

Defendant's violations stem primarily from its allegedly improper Online Payment Fees. Defendant's loan servicing software system assesses the Online Payment Fees automatically and applies them to thousands of California consumers.  (FAC ¶ 22.)  Plaintiffs allege that "no deed of trust or promissory note for any residential mortgage serviced or sub-serviced by LoanCare" authorizes Online Payment Fees, and by charging consumers these fees, LoanCare is violating the law.  (FAC ¶ 23.)

Plaintiffs assert the following two causes of action against LoanCare in their FAC:  (1) violation of Rosenthal Fair Debt Collection Practices Act under California Civil Code §§ 1788 *et seq.* ("Rosenthal"); (2) violation of Unfair Competition Law under California Business & Professional Code §§ 17200 *et seq.* ("UCL").  (*See generally* FAC.)

Plaintiffs initially brought the claims on behalf of themselves and two classes of similarly situated consumers, namely:

> **The Class**: All borrowers of California residential mortgage loans who, during the Class Period, were charged an Online Payment Fee by LoanCare and whose loans were past-due at the time the Online Payment Fee was assessed.

> **The Elder Abuse Sub-Class**: All borrowers of California residential mortgage loans who, during the Class Period, were charged an Online Payment Fee by LoanCare and whose loans were past-due at the time the Online Payment Fee was assessed and who were at least 65 years of age at the time the Online Payment Fee was assessed.

(FAC ¶ 26.)  In its FAC, Plaintiff seeks actual and statutory damages as allowed by Rosenthal, restitution as allowed by the UCL, trebled damages for elder abuse, and attorneys' fees.  (FAC ¶ 56.)

> B.    Procedural Background

Prior to March 1, 2018, Plaintiffs made mortgage payments directly to their local bank branch on the 16th of each month, the last day of the "grace period."  (FAC ¶ 16.)  In late February 2018, Plaintiffs received a "Notice of Service Transfer" from LoanCare stating that it would be collecting payments on behalf of Plaintiffs' bank.  (FAC ¶ 18.)  The notice provided instructions on how to make payments and outlined some of the fees that accompany each payment option.  On or about April 16, 2018, the day of the month Plaintiffs typically pay their bill, Plaintiffs attempted to make a payment online and were assessed a $10 fee.  (FAC ¶ 19.)  At this time, Plaintiffs learned that LoanCare assesses a $10 Online Payment Fee for any mortgage payments received during the last five days of the "grace period."  (FAC ¶ 19.)  On April 22, 2018, Plaintiffs notified LoanCare in writing that they contested the Online Payment Fee and demanded proof that their loan

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only
___
___
___
___
___

**CASE NO.:   CV 2:18-09376 SJO (RAOx)**          **DATE: March 24, 2020**

document authorized the $10 fee; Plaintiffs received an auto-generated response thanking them for contacting LoanCare.  (FAC ¶ 19.)  On May 16, 2018, Plaintiffs paid online and were charged a $10 fee.  (FAC ¶ 20.)  Again, Plaintiffs contested the charge in writing.  Although the $10 fees for April and May were later reversed, Plaintiffs were charged Online Payment Fees in June, July, and August of 2018.  (FAC ¶¶ 20-21.)  In a letter dated September 27, 2018 LoanCare notified Plaintiffs that it was unable to waive any future Online Payment Fees.  (FAC ¶ 24.)

Plaintiffs filed their Complaint in California Superior Court on October 3, 2018, and on November 2, 2018, the action was removed to this Court.  (*See* Notice of Removal, Ex A, ECF No. 1.) Defendant filed its Answer to the Complaint on December 10, 2018.  (*See* Answer, ECF No. 15.) On April 2, 2019, Plaintiffs filed their First Amended Complaint.  (*See* First Amended Compl. ("FAC"), ECF No. 37.)  Defendant filed its answer to Plaintiff's FAC on April 15, 2019.  (*See* Answer to FAC, ECF No. 39.)

On May 6, 2019, Plaintiffs filed a Motion to Certify Class ("CC Mot.").  (ECF No. 42.)  Defendant opposed this motion ("CC Opp'n") on May 28, 2019.  (ECF No. 51.)  Before the hearing date, however, the parties filed a joint stipulation asking the Court to withhold its ruling pending mediation.  (Joint Stipulation to Stay Case Pending Mediation, ECF No. 60.)

On July 22, 2019, the parties lodged another joint stipulation for settlement and asked the Court to set a briefing schedule for preliminary approval.  (*See* Joint Stip. for Settlement and Request for Preliminary Approval Briefing Schedule, ECF No. 62.)  The Court set a schedule and Plaintiffs filed a Motion to Certify Class and for Preliminary Approval of Settlement Agreement ("Motion") on August 16, 2019, along with declarations from Plaintiffs' counsel and a copy of the proposed Settlement Agreement.  (*See* Motion, ECF No. 65; Decl. of Christopher P. Ridout, Exh. 1 ("SA"), ECF No. 67-1.)

On September 16, 2019, the Court denied Plaintiffs' Motion.  (Order, ECF No. 74.)  In its Order, the Court: (1) concluded conditional class certification of the class noted in the order was appropriate for the purpose of settlement (Order 12); (2) noted that the notice requirements were generally satisfied, but that some form of skip-tracing should be used for potential class members who no longer make mortgage payments to LoanCare (Order 13); and (3) held the proposed settlement terms were insufficient to safeguard the interests of the proposed class, specifically noting that "[t]he lack of a lump-sum settlement amount–coupled with less than robust notice and claim procedures–are problematic, especially in light of the proposed large, single attorneys' fee payment" (Order 18).  On February 6, 2020, Plaintiffs filed their Renewed Motion and attached the Amended Settlement Agreement.  (Amended Settlement Agreement, ECF No. 82-1.)

//
//

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:  CV 2:18-09376 SJO (RAOx)**          **DATE: March 24, 2020**

II.      DISCUSSION

A.       Conditional Class Certification

The Court incorporates its previous holding regarding conditional class certification, for the reasons stated in its previous Order.  (Order 12.)

B.       Notice

The Court previously suggested some form of skip-tracing be used for potential class members who no longer make mortgage payments to LoanCare.  (Order 13.)  The Amended Settlement Agreement includes skip-trace provisions, specifically that for current customers whose notice packet is returned as undeliverable, "the Settlement Administrator will run a skip trace using Accurint," and for former customers, "the Settlement Administrator will run a skip trace using Accurint to update the data with current addresses for all Class Members identified as former customers to update addresses for those who may have moved."  (Amended Settlement Agreement ¶¶ 50(a), (b).)   The Settlement Administrator further attests that based on his experience supervising case managers on hundreds of class action settlements, "the various steps involved in updating addresses for the Notice Program are the most effective and accepted method to locate class members." (Renewed Motion 3.)  The Court finds the Amended Settlement Agreement, with the added skip trace provisions, satisfy the notice portion of Rule 23.

C.       Fairness, Adequacy, and Reasonableness of the Amended Settlement Agreement

"Having determined that class treatment appears to be warranted, the [C]ourt must now address whether the terms of the parties' settlement appear fair, adequate, and reasonable."  *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 664 (E.D. Cal. 2008); *see also Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992).  In assessing whether a class action settlement agreement is fair, adequate, and reasonable, courts examine several factors, including:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).  "Given that some of these factors cannot be fully assessed until the court conducts its fairness hearing, 'a full fairness analysis is unnecessary at

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | _____ |
| Send | _____ |
| Enter | _____ |
| Closed | _____ |
| JS-5/JS-6 | _____ |
| Scan Only | _____ |

**CASE NO.:   CV 2:18-09376 SJO (RAOx)         DATE: March 24, 2020**

th[e preliminary approval] stage.'"  *Alberto,* 252 F.R.D. at 665 (quoting *West v. Circle K Stores, Inc.*, No. Civ. S-04-0438 WBS GGH, 2006 WL 1652598, at *9 (E.D. Cal. June 13, 2006)).

Instead, preliminary approval and notice of the settlement terms to the proposed class are appropriate where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval . . . ."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  The Court need not "specifically weigh[ ] the merits of the class's case against the settlement amount and quantif[y] the expected value of fully litigating the matter."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Instead, the Court need only determine whether the proposed settlement is "the product of an arms-length, non-collusive" negotiation. *Id.*

### 1.      Overview of the Settlement Terms

The Amended Settlement Agreement provides a lump-sum (with no reversion), all-in settlement amount of $3.4 million, with automatic settlement payments to current customers, and a claims procedure limited to former customers.  The settlement amount will be used to pay Administration Expenses, any Service Awards, and Attorneys' Fees, following which the remainder will be used to pay individual allocations (calculated based on the proportion of fees paid to aggregate fees paid), with any leftover funds distributed *cy pres* to Habitat for Humanity California.  LoanCare affirms it does not intend to resume charging the fees at issue to past-due California borrowers.

### a.      Estimate of the Value of the Case

Class counsel calculates that LoanCare received $8,577,812 in fees (over 111,336 loans). (Renewed Motion 7.)  The $3.4 million settlement amount represents 38.64% of the fees.  (*Id.*)

In the absence of a settlement, LoanCare states that it intends "to vigorously defend against class certification and the merits of the claims," and lists what it contends are nine significant merits issues that present significant risk to Plaintiffs.  (Response 3-17.)  While the Court declines to comment on the merits of LoanCare's arguments, the Court agrees that LoanCare appears to be prepared to vigorously defend itself in this action and that a settlement avoids what could be a prolonged litigation.

Furthermore, the Court finds the 38.64% settlement calculation in line with other class action settlements approved by courts.  *See, e.g.*, *Garcia v. Nationstar Mortg. LLC*, No. C15-1808 (W.D. Wash. 2017) (approving $3.875M reversionary settlement fund representing 32.3% of fees); *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-cv-1831 (N.D. Ala. 2019) (approving $9.7M

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:  CV 2:18-09376 SJO (RAOx)        DATE: March 24, 2020**

non-reversionary settlement fund representing 30% of fees).  Based on class counsel's updated estimated value of the case, and precedent supporting the percentage of fees, the Court finds the settlement amount reasonable.

### b.    Administration and Allocation of Settlement Funds

The previous Settlement Agreement required all claimants file a claim within 60 days, with any unclaimed funds reverting back to LoanCare.  The Amended Settlement Agreement provides: (1) automatic payments to current customers (no requirement to submit any claim), (2) 120 days for former customers to submit a claim, and (3) claim submissions by postage prepaid return mail or electronic submission.  Additionally, because the settlement fund is non-reversionary, and all claimants receive a proportional payment calculated by individual fees v. aggregate fees, the Court does not see a perverse incentive for LoanCare to discourage claimants from coming forward.

### c.    Other Payments

The Amended Settlement Agreement contemplates that the following sums may be distributed from the Gross Settlement Amount to the following groups:  (1) approximately $135,000 in administrative costs (to be determined at the final approval hearing); (2) at least $7,500 for each of Andrea and Marshall Sanders; and (3) class counsel's attorneys' fees made by motion, supported by a memorandum of points and authorities and evidence of work performed in the action.  (Renewed Motion 13-15.)

### i.    Administrative Fees

The Settlement Administrator has increased its cost estimates from $98,000 to $135,000 based on the additional notice and claims procedures in the Amended Settlement Agreement.  The Court shall make a final determination as to the reasonableness of the requested administrative fees at the final approval hearing.

### ii.    Incentive Awards

The Amended Settlement Agreement leaves ultimate discretion to the Court to award each named Plaintiff an incentive award for their service to the class.  (Renewed Motion 13.)  Although the Court suggested in its Order that a combined payment of $5,000 would be proper because Plaintiffs are a married couple residing at the same address who would only be entitled to make a single claim, Plaintiffs maintain their suggestion that an award of $7,500 each is appropriate.  (*Id.*)  Plaintiffs state they have taken substantial efforts, such as Mr. Sanders' repeated challenges to LoanCare's fees, collection of thousands of pages of documents, and interview and selection

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | _____ |
| Send | _____ |
| Enter | _____ |
| Closed | _____ |
| JS-5/JS-6 | _____ |
| Scan Only | _____ |

**CASE NO.:  CV 2:18-09376 SJO (RAOx)**          **DATE: March 24, 2020**

of class counsel, totaling approximately 60.7 hours. (Renewed Motion 13-14.) In addition, Mr. and Mrs. Sanders were both deposed. (Renewed Motion 14.) Each is a working professional and both are considered by counsel to be excellent class representatives. (*Id.*)

In evaluating incentive awards, the Court may consider whether there is a "significant disparity between the incentive award[] and the payments to the rest of the class members" such that it creates a conflict of interest. *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013). Courts are also to consider "the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015).

"Incentive awards typically range from $2,000.00 to $10,000.00," and "[h]igher awards are sometimes given in cases involving much larger settlement amounts." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. 2015) (collecting cases).

Although Plaintiffs' proposed $7,500 incentive awards fall in this "typical range," it lies at the top end and there is a significant disparity between the $7,500 incentive awards and the substantially lower average payment (approximately $30) to the rest of the class members.[1] Moreover, Ms. Sanders states that she devoted 14 hours of time to her deposition (with related preparation and travel) and review of claims and discovery responses, which is significantly less than the 60 hours expended by her husband. Plaintiffs have not demonstrated why Ms. Sanders merits an equal award to her husband, where Plaintiffs do not dispute they would only be entitled to submit a single claim. Given the disparity between Plaintiffs' proposed incentive awards totaling $15,000 and the average payment to the rest of the class members, as well as Mr. Sanders' significantly greater involvement than Mrs. Sanders, the Court awards Plaintiffs a single award of $7,500.

iii.    Attorneys' Fees and Costs

"In order for a settlement to be fair and adequate, 'a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement.'" *Alberto,* 252 F.R.D. at 667 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003)). "The district court has discretion to use either the percentage-of-the-fund method or the [lodestar] method in calculating fee awards in common fund cases." *Alberto,* 252 F.R.D. at 667 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). In the Ninth Circuit, "no presumption in favor of either

---

[1]  Based on the estimated $3,400,000 maximum settlement divided by the more than 111,000 potential class members, the average settlement would be approximately $30.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:  CV 2:18-09376 SJO (RAOx)**        **DATE: March 24, 2020**

the percentage or the lodestar method encumbers the district court's discretion to choose one or the other." *In re Wash. Pub. Power*, 19 F.3d at 1296.  Instead, "when determining attorneys' fees, the district court should be guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances."  *Id.* (citation and quotation marks omitted).

Plaintiffs' counsel state they will request fees by motion, supported by a memorandum of points and authorities and evidence of work performed in the action, with information regarding Plaintiffs' lodestar and actual expenditures.  (Renewed Motion 14.)  The parties acknowledge the Court has discretion to award reasonable attorneys' fees and that in the event the Court awards less than the full amount of requested fees, the Amended Settlement Agreement shall remain in full force and effect.  (Renewed Motion 14-15.)  The Court finds this provision reasonable.

d.        Opting Out and Objecting

As the Court previously noted in its Order, the Court finds the procedures regarding opting out will adequately put Class Members on notice of their rights under the Amended Settlement Agreement, and the parties have not modified this term.  (Order 17; Renewed Motion 15.)

e.        Release

As the Court previously noted in its Order, the Court finds that although the releases are relatively broad, the Court does not find the waiver renders the settlement unfair, unreasonable, or inadequate, particularly because it might not have been feasible to settle this litigation without such a waiver, and because Class Members who do not wish to have their claims released may elect to opt out of the settlement, and the parties have not modified this term.  (Order 18; Renewed Motion 15.)

D.        Conclusion

In sum, the Court finds that: (1) Plaintiffs appear to satisfy the class certification requirements, (2) the Amended Settlement Agreement satisfies the notice requirements, and (3) the Amended Settlement Agreement appears to be fair, adequate, and reasonable.

//

//

//

//

MINUTES FORM 11
CIVIL GEN                                    Page 8 of  9                    Initials of Preparer _____    __ : __

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | _____ |
| Send | _____ |
| Enter | _____ |
| Closed | _____ |
| JS-5/JS-6 | _____ |
| Scan Only | _____ |

**CASE NO.:  CV 2:18-09376 SJO (RAOx)**        **DATE: March 24, 2020**

III.    RULING

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Unopposed Renewed Motion for Preliminary Approval of Settlement Agreement.  The Court:

(1) Grants preliminary approval of the Amended Settlement Agreement (ECF No. 82-1);
(2) Provisionally certifies the proposed Settlement Class as previously indicated (Order, ECF No. 74, at 12);
(3) Appoints Plaintiffs as Class Representatives and their attorneys as Class Counsel;
(4) Approves the proposed Notice;
(5) Sets the Final Fairness Hearing for November 16, 2020, at 10:00 AM; and
(6) Requires Plaintiffs to file their Motion for Final Approval of Settlement and Motion for Attorneys' Fees no later than October 19, 2020.

IT IS SO ORDERED.