UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | CV 18-9376 PA (RAOx) | Date | December 4, 2020 |
|---|---|---|---|
| Title | Andrea S Sanders v. LoanCare, LLC et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Gabby Garcia | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   IN CHAMBERS - COURT ORDER

Before the Court is a (1) Motion for Final Approval of Proposed Class Action Settlement Agreement and Certification of Settlement Class, and (2) Motion for Attorney Fees and Costs and Award of Class Representatives Incentive Payment filed by plaintiffs Andrea S. Sanders and Marshall C. Sanders ("Plaintiffs"). (Dkts. 98-99, 105-106.) Defendant LoanCare, LLC ("Defendant") does not oppose the motions. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.

**I.      Background**

This putative class action centers on allegations that Defendant charged consumers fees for making a payment online or by phone during the grace period permitted under their deeds of trust and promissory notes. Defendant charged these fees (hereinafter referred to as "Special Request Fees") despite receiving no express authorization from consumers' deeds of trust or promissory notes securing their residential mortgages. Plaintiffs contend the Special Request Fees violated California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act" or "RFDCPA") and Unfair Competition Law ("UCL"). Defendant denies all claims asserted and all allegations of wrongdoing and liability.

On October 3, 2018, Plaintiffs filed a Complaint in the Superior Court of California for Los Angeles County. On November 2, 2018, Defendant removed the action on the basis that this Court has jurisdiction under the Class Action Fairness Act ("CAFA"). Defendant filed a motion to dismiss, which the Court denied. (Dkts. 14, 27.) On April 2, 2019, Plaintiffs filed a First Amended Complaint. (Dkt. 37.) On April 15, 2019, Defendant filed an Answer. (Dkt. 39.) On May 6, 2019, Plaintiffs filed a Motion for Class Certification. (Dkt. 42.) The parties filed a joint stipulation requesting the Court withhold its ruling pending the parties' participation in mediation. (Dkt. 60.) The Court granted the joint stipulation, (Dkt. 61), and the parties participated in mediation before the mediator Jeffrey Krivis. On July 22, 2019, the parties filed a Stipulated Notice of Settlement and Request for Preliminary Approval Briefing Schedule. (Dkt. 62.) On August 16, 2019, Plaintiffs filed a Motion to Certify Class and for Preliminary Approval of Settlement Agreement. (Dkts. 65-66.) On September 16, 2019, the Court denied Plaintiffs' motion. (Dkt. 74.) Although Plaintiffs appeared to satisfy the class certification

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9376 PA (RAOx) | Date | December 4, 2020 |
|---|---|---|---|
| Title | Andrea S Sanders v. LoanCare, LLC et al. | | |

requirements, the Court concluded that the proposed settlement terms were insufficient to safeguard the interests of the proposed class. (Id. at 18.)

On February 6, 2020, the parties filed a Renewed Motion to Certify Class and Preliminarily Approve Amended Settlement Agreement. (Dkts. 80-81.) On March 24, 2020, the Court issued an Order preliminarily approving the amended settlement agreement. (Dkt. 88.) The Court concluded that: (1) Plaintiffs appear to satisfy the class certification requirements, (2) the amended settlement agreement satisfies the notice requirements, and (3) the amended settlement agreement appears to be fair, adequate, and reasonable. (Id. at 8.) Therefore, the Court provisionally certified the proposed settlement class, appointed Plaintiffs as class representatives and their attorneys as class counsel, approved the proposed notice, and set a final fairness hearing for November 16, 2020. (Id. at 9.)

Plaintiffs have now filed two motions seeking final settlement approval, certification of the settlement class, and approval of an award of attorney's fees, costs, and class representative incentive payments. Under the terms of the settlement agreement, Defendant will pay $3,400,000 to settle all claims asserted in the action. Plaintiffs' Service Award, attorneys' fees and expenses, and settlement administration expenses will be deducted from the settlement fund. The remaining funds will be distributed among class members who are current customers, and former customers who submitted a valid claim. The settlement class has agreed to certain releases and covenants not to sue.

**II.    Class Certification for Settlement Purposes**

Plaintiffs must demonstrate the proposed settlement class meets the requirements of Rule 23(a) and Rule 23(b)(3). See Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 580 (9th Cir. 2010), rev'd on other grounds, 564 U.S. 338 (2011). Rule 23(a) requires a finding that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires a finding that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

To obtain class certification, "actual, not presumed, conformance with Rule 23(a) [is] . . . indispensable," and the Court conducts a "rigorous analysis" to ensure these requirements are satisfied. Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 160-61 (1982). This rigorous analysis "does not mean that a district court must conduct a full-blown trial on the merits prior to certification. A district court's analysis will often, though not always, require looking behind the pleadings, even to issues overlapping with the merits of the underlying claims." Dukes, 603 F.3d at 581. Plaintiff must demonstrate to the Court's satisfaction, and not merely allege, that the suit is appropriate for class resolution. Id. at 582. Rule 23 "provides district courts with broad discretion to determine whether a class should be certified." Armstrong v. Davis, 275 F.3d 849, 871 n. 28 (9th Cir. 2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9376 PA (RAOx) | Date | December 4, 2020 |
|---|---|---|---|
| Title | Andrea S Sanders v. LoanCare, LLC et al. | | |

The Settlement Class is defined as follows:

> All borrowers with residential mortgage loans for California properties who, during the Class Period of October 3, 2014 to [March 24, 2020], paid to LoanCare a fee for Online Payment, Automated Phone System Payment, or Pay-by-Phone (over the phone check) services at a time when the loan was past-due. Excluded from the Settlement Class are (i) Loan Care's employees, (ii) persons who timely and properly exclude themselves; and (iii) the federal district and magistrate judge assigned to this action, along with persons within the third degree of relationship to them.

(Dkt. 99 at 5.) The parties have agreed that Plaintiffs will be the class representatives for settlement purposes, and that the law firms of Zimmerman Reed and Gubernick Law P.L.L.C., will act as class counsel for the settlement class. (Id.) For the reasons discussed below, the Court finds that Plaintiffs satisfy the class certification requirements of Rule 23(a) and (b)(3) for settlement purposes.

### A. Numerosity

The numerosity requirement is met if the class is so numerous that joinder of all members individually is "impracticable." Fed R. Civ. P. 23(a)(1). "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." In re Cooper Cos. Inc. Sec. Litig., 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing Gen. Tel. Co. of Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980)). However, "numerosity is presumed where the plaintiff class contains forty or more members." Litty v. Merrill Lynch & Co., 2015 WL 4698475, at *3 (C.D. Cal. Apr. 27, 2015) (citing In re Cooper Cos. Sec. Litig., 254 F.R.D. at 634). Defendant has shared contact information for 108,713 unique class members with the settlement administrator. (Dkt. 104 (Montague Decl.) ¶8; Dkt. 99 at 6 (61,857 class members will each receive a payment from the settlement fund).) Thus, it appears the numerosity requirement is met.

### B. Commonality

The commonality requirement is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Class claims must "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350. "The fact that there is some factual variation among the class grievances will not defeat a class action . . . A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." Ballard v. Equifax Check Servs., Inc., 186 F.R.D. 589, 594 (E.D. Cal. 1999) (citation omitted). The Court finds that the legality of Defendant's Special Request Fees is a common question for the settlement class. The fees either violate the Rosenthal Act and UCL, or they do not. Therefore, it appears the commonality requirement is met.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9376 PA (RAOx) | Date | December 4, 2020 |
|---|---|---|---|
| Title | Andrea S Sanders v. LoanCare, LLC et al. | | |

### C. Typicality

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This will "assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). Class representatives "must be able to pursue [their] claims under the same legal or remedial theories as the represented class members." In re Paxil Litig., 212 F.R.D. 539, 549 (C.D. Cal. 2003) (citing Kennedy v. Unumprovident Corp., 50 F. App'x 354 (9th Cir. 2002)). Plaintiffs, like class members, were charged Special Request Fees during their residential mortgage grace period. (Dkt. 74 at 6-7; Dkt. 99 at 14.) To the extent that Defendant's Special Request Fees are illegal, Plaintiffs and class members have suffered the same injury. Finally, the Court previously concluded that Plaintiffs are not subject to any unique defenses that would render their claims atypical. (Dkt. 74 at 9-10.) Therefore, it appears the typicality requirement is met.

### D. Adequacy of Representation

The representative parties must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the named plaintiff does "not have conflicts of interest with the proposed class," and the class is "represented by qualified and competent counsel." Dukes, 603 F.3d at 614. The Court previously concluded there is no conflict of interest between Plaintiffs and other class members. (Dkt. 74 at 7-8.) The Court also concluded that Marshall Sanders is an adequate class representative. (Id.) Based on Plaintiffs' briefing and evidence, it appears that they have taken an active role in the litigation and continued to do so throughout the settlement. (Dkt. 99 at 14; Andrea Sanders Decl. ¶¶6-10; Marshall Sanders Decl. ¶¶9-10, 13-16.) Plaintiffs also selected counsel who are qualified and have the resources to conduct this litigation. (Dkt. 100 (Ridout Decl.) ¶¶3-6; Dkt. 101 (Gubernick Decl.) ¶¶3-5.) For these reasons, the adequacy requirement is met.

### E. Predominance

The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting Amchem Prods. v. Windsor, 521 U.S. 591, 623 (1997)). This analysis requires more than proof of common issues of law or fact. Id. Rather, the common questions must "present a significant aspect of the case [that] can be resolved for all members of the class in a single adjudication." Id. (quotation and citation omitted). "Considering whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying cause of action." Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 809 (2011).

Plaintiffs' Rosenthal Act claim poses four common questions: (1) whether the class is comprised of consumers who have residential mortgages and therefore are "debtors" within the scope of the Act; (2) whether Defendant's assessment of Special Request Fees qualifies as "collection activity" under the Act; (3) whether Defendant is a "debt collector" under the Act; and (4) whether Defendant's Special

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9376 PA (RAOx) | Date | December 4, 2020 |
|---|---|---|---|
| Title | Andrea S Sanders v. LoanCare, LLC et al. | | |

Request Fees fall under the Act's unlawful content ("the collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."). (Dkt. 74 at 9.)

The Court previously rejected Defendant's argument that individualized inquiries will predominate. (Id. at 9-10.) Defendant asserted that some class members may have investment loans or mortgage contracts that allow fees. (Id.) However, Defendant failed to provide any evidence that the class contained consumers with investment loans. (Id.) Defendant also failed to produce sufficient evidence that Plaintiffs' deed of trust or promissory note authorized the Special Request Fees. (Id.) Defendant pointed to language in Plaintiffs' deed of trust that authorizes "payment of charges allowed by law," but this is far from the "express authorization" the FDCPA requires. (Id.) Defendant refused to produce evidence of express authorization in other class members' contracts. (Id.) Because there is no evidence of "express authorization" for Defendant's Special Request Fees, the Court finds that the Rosenthal Act claim satisfies the predominance inquiry. (Id.)

The Court also finds that Plaintiff's UCL claim satisfies the predominance requirement. Plaintiffs' UCL claim poses two common questions: (1) whether Defendant's act of charging Special Request Fees is a "business practices," and if so, (2) whether Defendant's "business practice" violates the Rosenthal Act. (Dkt. 74 at 10.) Because Plaintiffs' UCL claim is predicated on the same conduct giving rise to Plaintiffs' Rosenthal Act claim, it succeeds or fails along with it. See Glenn K. Jackson, Inc. v. Roe, 273 F.3d 1192, 1203 (9th Cir. 2001)("[T]he breadth of § 17200 does not give a plaintiff license to 'plead around' the absolute bars to relief contained in other possible causes of action by recasting those causes of action as ones for unfair competition.") (citing ICel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal 4th 163, 182 (1999)).

The Court previously rejected Defendant's argument that the voluntary payment doctrine poses a unique defense for Plaintiff's UCL claim. (Dkt. 74 at 10-11.) The Court concluded that applying the voluntary payment doctrine would run contrary to public policy. (Id. (citing Sobel v.Hertz Corp., 698 F. Supp. 2d 1218, 1224 (D. Nev. 2010) ("To allow [the defendant] to avoid liability for [an] unfair practice through the voluntary payment doctrine would nullify the protections of the act and be contrary to the intent of the legislature.") (quotations and citation omitted) (vacated on other grounds)); Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 170 P.3d 10, 24 (Wash. 2007) ("[T]he voluntary payment doctrine is inappropriate as an affirmative defense in the CPA context, as a matter of law, because we construe the CPA liberally in favor of plaintiffs.")).) Individualized inquiry into each class members' payment history, understanding of the fee, and voluntary payment is unnecessary here.

   **F. Superiority**

The superiority inquiry asks whether "a class action is superior to other available methods for fairly and efficiently adjudicating this controversy." Fed. R. Civ. P. 23(b)(3). The class action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9376 PA (RAOx) | Date | December 4, 2020 |
|---|---|---|---|
| Title | Andrea S Sanders v. LoanCare, LLC et al. | | |

Here, thousands of individual lawsuits from class members would significantly burden judicial resources. Moreover, potential recovery for individual class members appears to be relatively small. "If plaintiffs cannot proceed as a class, some—perhaps most—will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover." Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir. 2001). Finally, any class member who wishes to control their own litigation had the opportunity to opt out of the class. Therefore, it appears the superiority requirement is satisfied.

Accordingly, the Court certifies, for settlement purposes only, the proposed settlement class.

**III. Adequacy of Notice to the Settlement Class**

Under Rule 23(e), this Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). This must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Klee v. Nissan N. Am., Inc., 2015 WL 4538426, at *5 (C.D. Cal. July 7, 2015). On February 14, 2020, the settlement administrator timely served CAFA notices, consistent with 28 U.S.C. § 1715, to the appropriate federal official and state officials as follows: (1) United States Attorney General, (2) the California Attorney General, and (3) California Department of Business Oversight. (Dkt. 104 (Montague Decl.) ¶7, Ex. A.) In addition, the parties have initiated a multi-faceted notice program to ensure all class members were informed about the settlement agreement. The parties modeled the notice program after similar notice programs that district courts in this Circuit have previously approved. (Dkt. 99 at 9 (citing In re Toyota Motor Corp. Unintended Acceleration Mkty., Sales Practices, & Prod. Liab. Litig., 2013 WL 3224585, at *5-6 (C.D. Cal. June 17, 2013)).)

Notice included the following information: (1) description of material terms of the settlement; (2) description of the right to "opt out" and the opt-out deadline; (3) description of the right to object and the objection deadline; (4) final approval hearing date; (5) description of the claims process for former customers; and (6) the settlement website address. (Dkt. 100 (Ridout Decl.), Exs. 2-6.) RG/2 Claims Administration LLC (the "Settlement Administrator" or "RG/2") disseminated notice to the class through a combination of mail, email, and long-form notice on the settlement website: (1) post-card notice to current customers; (2) post-card notice with a claim form to former customers; (3) long-form notice to be placed on a settlement website; (4) email notice to current customers; and (5) email notice to former customers with a link to an electronic claims form. (Dkt. 104 (Montague Decl.) ¶¶12-15.) Mail and email notice was timely completed. (Dkt. 99 at 10.) All notices directed class members to the settlement website[1], which contained the following information: (1) online claim submission platform; (2) long-form class notice; (3) hard-copy claim form to print and mail or fax; (4) copy of the settlement agreement, operative Second Amended Complaint, and the Court's Order preliminarily approving the

---

[1] The settlement website is located at https://www.rg2claims.com/specialrequestfeeaction.html.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9376 PA (RAOx) | Date | December 4, 2020 |
|---|---|---|---|
| Title | Andrea S Sanders v. LoanCare, LLC et al. | | |

settlement; (5) summary of the settlement; (6) important deadlines by which to submit claims, file objections, or opt-out of the class; and (7) contact information for RG/2 and class counsel. (Id. at 11.)

To ensure sufficient notice to all class members, Defendant shared with RG/2 the names and last known mailing addresses of the identifiable class members. (Dkt. 104 (Montague Decl.) ¶8.) RG/2 analyzed this data and developed the "Current Customer Notice List" and the "Former Customer Notice List." (Id.) Prior to mailing the notice packets to current customers, RG/2 processed the class data list through the United States Postal Service's ("USPS") National Change of Address database ("NCOA") and updated the data with any corrected information. (Id. at ¶9.) Prior to mailing the notice packets to former customers, the Settlement Administrator performed skip-trace procedures on the class data list through Accurint—a comprehensive address database for skip-tracing—and updated the data with any corrected information. (Id. at ¶10.) For notices that were returned as undeliverable, RG/2 undertook reasonable efforts to determine the reason for the return and re-mailed notice to any new addresses located as a result of any further skip-tracing process. (Id. at ¶13.) The Settlement Administrator attests that "in [her] experience administering class action settlements, the various steps involved in updating addresses for this Notice Program are the most effective and accepted method to locate class members." (Id. at ¶11.) Based on Plaintiffs' briefing and evidence submitted, the Court finds that the notice procedures satisfied the requirements of due process and Rule 23(e).

### IV.     Fairness of the Class Settlement

Rule 23(e) requires a proposed class action settlement be "fundamentally fair, adequate, and reasonable." Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (quoting Hanlon, 150 F.3d at 1026). The Court evaluates the settlement based on factors such as: (1) strength of plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and stage of the proceedings; (6) experience and views of counsel; and (7) class member reactions to the proposed settlement. Id. "[T]he settlement may not be the product of collusion among the negotiating parties." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product or fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 150 F.3d at 1027.

#### A.     Amount Offered in the Settlement Agreement

"[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" Officers for Justice v. Civil Service Com., 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." Id. at 625.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9376 PA (RAOx) | Date | December 4, 2020 |
|---|---|---|---|
| Title | Andrea S Sanders v. LoanCare, LLC et al. | | |

Here, the settlement agreement provides a lump-sum of $3.4 million to class members. The settlement fund will be used to pay Plaintiffs' Service Award ($7,500), attorneys' fees and litigation expenses ($880,688.71), and settlement administration expenses ($134,340). All remaining funds will be distributed to class members who are current customers, and former customers who submitted a valid claim. A total of 61,857 class members will receive payments in the form of a credit or check in the amount proportionate to fees paid to Defendant compared to the total aggregate amount of total fees paid by all class members. (Dkt. 99 at 6.) The settlement fund is non-reversionary, and any leftover funds will be distributed cy pres to Habitat for Humanity California. Defendant affirms it does not intend to resume charging the fees at issue to past-due California borrowers. (Dkt. 88 at 5.)

The Court previously concluded that the settlement fund, which amounts to 38.64% of the total fees that class members paid to Defendant, is in line with other court-approved class action settlements. (Id. (citing Garcia v. Nationstar Mortgage LLC, CV No. 15-1808 TSZ (W.D. Wash. 2018) (approving $3.875 million reversionary settlement fund representing 32.3% of convenience fees charged); McWhorter et al v. Ocwen Loan Servicing LLC et al, CV No. 25-1831 (N.D. Ala. 2019) (approving $9.7 million non-reversionary settlement fund representing 30% of fees)).) "Even a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." Millan v. Cascade Water Servs., 310 F.R.D. 593, 611 (E.D. Cal. 2015) (collecting cases). This settlement fund gives class members relief they might not otherwise receive because "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." Wolin v. Jaguar Land Power North America, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010). "Plaintiffs believe the instant settlement is drafted in the best interests of the putative Class." (Dkt. 99 at 20.) For all of these reasons, the Court finds the settlement amount offered weighs in favor of final approval.

> **B.      Strength of Plaintiff's Case; Risk, Expense, Complexity, and Likely Duration of Further Litigation; and Extent of Discovery Completed**

"When evaluating the strength of a case, the Court should evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." De Santos v. Jaco Oil Co., 2015 U.S. Dist. LEXIS 93410, at *16 (E.D. Cal. July 17, 2015). In addition, "courts look for indications the parties carefully investigated the claims before reaching a resolution." In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig., 2016 WL 6248426, at *13 (N.D. Cal. Oct, 25, 2016) (quotations and citation omitted). "Most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them. Settlements of such complex matters are favored by courts." In re Austrian & Ger. Bank Holocaust Litig., 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (citations omitted).

Plaintiffs still have numerous hurdles to overcome if this litigation proceeds: class certification, summary judgment, trial, and post-judgment appeals. "[T]he parties (and the mediator) here recognized that this area of the law is unsettled and that there are significant open issues regarding liability and remedies that would have to be resolved by this Court and, inevitably, the Court of Appeals, through

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9376 PA (RAOx) | Date | December 4, 2020 |
|---|---|---|---|
| Title | Andrea S Sanders v. LoanCare, LLC et al. | | |

protracted and costly litigation if the parties were to proceed with litigation." (Dkt. 86 at 2.) Even if Plaintiffs prevailed at trial, the amount of recovery remains uncertain—and Plaintiffs admit that "the costs ancillary to obtaining that recovery would be immense." (Dkt. 99 at 17.) In addition, it appears that the parties carefully investigated the claims before reaching a resolution. The parties exchanged initial disclosures, interrogatories, requests for admission, and requests for production. (Id. at 18.) Plaintiffs deposed Defendant's Rule 30(b)(6) witness, and Defendant deposed both named Plaintiffs. (Id.) The parties also engaged in motion practice and discovery related to class certification that focused on the facts and merits at issue before reaching a settlement. (Id.) Plaintiffs believe they "obtained enough information throughout this process to make an informed decision regarding Settlement." (Id.) The Court finds that these factors weigh in favor of final approval.

### C. Experience and Views of Counsel

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation omitted). Class counsel have sufficient experience—both in class action litigation and cases arising under the UCL and Rosenthal Act—to appropriately assess the legal and factual issues in this matter and determine whether the settlement agreement serves the interests of the settlement class members. (Dkt. 100 (Ridout Decl.) ¶¶4-15; Dkt. 101 (Gubernick Decl.) ¶¶3-5.) Therefore, counsel's belief that the settlement agreement is both fair and adequate weighs in favor of final approval.

### D. Collusion Between the Parties

Courts must evaluate whether "fees and relief provisions clearly suggest the possibility that class interests gave way to self-interest," thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others. Staton, 327 F.3d at 961. There is no evidence of overt misconduct in this action. The Settlement Agreement was the product of informed, arms-length negotiations between the parties. (Dkt. 99 at 18-19.) The mediator proposed a settlement amount of $3.4 million, which the parties accepted after negotiations that were "heavily informed by the classwide settlements approved in two factually and legally similar cases." (Id. (citing McWhorter and Garcia).) Based on Plaintiffs' briefing and evidence, the Court finds that the settlement agreement is the product of non-collusive negotiations, and this weighs in favor of final approval.

### E. Reaction of Class Members to the Settlement

"[T]he absence of a large number of objections to the proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members." Nat'l Rural Telecomms. Coop., 221 F.R.D. at 529 (collecting cases). Plaintiffs state that "[t]he Class has reacted favorably to the Settlement after receiving Notice." (Dkt. 99 at 5.) Approximately 5,997 former customer class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9376 PA (RAOx) | Date | December 4, 2020 |
|---|---|---|---|
| Title | Andrea S Sanders v. LoanCare, LLC et al. | | |

members have submitted valid claims through the claims process established by the settlement agreement. (Id. at 6.) There have been no objections, and only two class members have opted out. (Id. at 5.) As of today's date, the Court has not received any objections from the settlement class. Therefore, this factor weighs in favor of settlement approval.

For the reasons discussed above, the Court finds the settlement agreement is fair, reasonable, and adequate. The Court therefore grants final approval of the settlement.

**V.     Attorneys' Fees and Litigation Expenses**

**A.     Attorneys' Fees**

The Court is obligated to conduct a careful review of the reasonableness of requested attorneys' fees and costs. See In re Wash Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994). "[I]n common fund cases[,] the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, [and] courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." Id. Plaintiffs' counsel seeks $850,000 in attorneys' fees. (Dkt. 106 at 1, 17-18.) This constitutes 25% of the gross settlement fund. In common fund cases, "where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method." Hanlon, 150 F.3d at 1029. "The percentage method means that the court simply awards the attorney a percentage of the fund sufficient to provide class counsel with a reasonable fee." Id. The Ninth Circuit has established 25% of the common fund "as a benchmark award for attorney fees." Id.; see also Adoma v. Univ. of Phx., Inc., 913 F. Supp. 2d 964, 981 (E.D. Cal. 2012) ("[C]ourts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record") (citing Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)).

"The lodestar method can confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 945 (9th Cir. 2011). Plaintiffs are represented by an attorney from Gubernick Law P.L.L.C., who worked 358.85 hours and charged a billing rate of $600 per hour ($215,310 total fees). (Dkt. 108 (Gubernick Decl.) ¶¶3-5, 14-15 (Gubernick is a 2011 law school graduate who has served as co-lead counsel in multiple consumer protection class actions, and tried over a dozen cases to verdict); Ex. A.) Plaintiffs are also represented by Zimmerman Reed, a firm specializing in class action litigation. (Dkt. 107 (Ridout Decl.) ¶¶3-4, 6 (declaring that Ridout has 29 years of experience, including in settlement administration of mass tort and class actions).) Zimmerman Reed declares that its partners worked 723.65 hours at billing rates of $505-$805 per hour, the associates worked 389.80 hours at billing rates of $350-$505 per hour; and the paralegals worked 338.22 hours at billing rates of $150-$315 per hour. (Id. at ¶15.) The firm spent 1,493.67 hours on this case and incurred $837,178.80 in attorneys' fees. (Dkt. 109 (Supp. Ridout Decl.), Ex. A at pp. 206.) Thus, the lodestar calculation is approximately $1,052,488.80 in fees ($215,310 + $837,178.80), which is greater than the $850,000 requested by class counsel.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9376 PA (RAOx) | Date | December 4, 2020 |
|---|---|---|---|
| Title | Andrea S Sanders v. LoanCare, LLC et al. | | |

Importantly, the notices to class members stated that Plaintiffs' counsel would seek no more than one million dollars in fees, and class members have not objected. (Dkt. 100 (Ridout Decl.), Ex. 2 at 5; Exs. 3-4.) The notices also stated that any amount awarded to class counsel will be paid from the settlement fund. (Id.) Finally, the Court acknowledges that Plaintiffs' counsel have performed work on a contingency basis for two years. (Dkt. 107 (Ridout Decl.) ¶18; Dkt. 108 (Gubernick Decl.) ¶17.) "Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work." Ching v. Siemens Indus. Inc., 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014). Considering the results achieved, time expended, risk of litigation, skill required, quality of work, contingent nature of the fee, financial burden carried by class counsel, and awards made in similar cases, as well as the lack of class member objections to the requested fee award, the Court finds that the requested attorneys' fee award is reasonable. The Court therefore grants Plaintiffs' request for $850,00 in attorneys' fees, to be awarded from the settlement fund.[2/]

### B. Litigation Costs

Plaintiffs' counsel requests $30,688.71 in litigation costs. (Dkt. 112 (Supp. Ridout Decl.) ¶5.) "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." In re Media Vision Tech. Sec. Litig., 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). Class counsel filed a declaration and itemized billing statement that identified the following costs: $2,667.87 for court fees; $46.70 for postage; $26.12 for call services; $75.76 for courier services; $388.76 in Federal Express invoices; $1,209.55 for research; $14,500.00 for mediation expenses; $6,300.00 for expert fees; $4,078.86 for deposition/transcript costs; $1,112.60 for travel expenses (airfare, lodging, business meals); $137.09 for ground transportation; and $145.40 for parking. (Dkt. 112 (Supp. Ridout Decl.), Ex. A.) The notices to class members stated that class counsel would seek reimbursement of their costs and expenses, to be paid from the settlement fund, and no class members have objected. Based on the evidence presented, the Court concludes that the requested costs are reasonable. See Greer v. Dick's Sporting Goods, Inc., 2020 U.S. Dist. LEXIS 168923, at *35 (E.D. Cal. Sept. 15, 2020); Vega v. Weatherford U.S., Ltd. P'ship, 2016 U.S. Dist. LEXIS 169448, at *46 (E.D. Cal. Dec. 7, 2016). The Court therefore grants Plaintiffs' request for $30,688.71 in costs, to be awarded from the settlement fund.

### C. Administration Expenses Award

RG/2 requests settlement administration expenses in the amount of $135,000. RG/2 was retained as the settlement administrator to perform duties such as: (1) prepare, print, mail, and email notices to 108,713 unique class members; (2) create and maintain the settlement website; (3) receive and process

---

[2/] In granting the requested 25% benchmark, the Court declines to rule on whether the proposed billing rates of class counsel are fair and reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 18-9376 PA (RAOx) | Date | December 4, 2020 |
| Title | Andrea S Sanders v. LoanCare, LLC et al. | | |

completed claim forms; (4) prepare weekly activity reports for class counsel; (5) handle inquiries from, and correspondence to, settlement class members; (6) re-mail notices; (7) skip-trace undeliverable addresses; and (8) calculate and issue settlement payments to valid claimants.  (Dkt. 104 (Montague Decl. ¶5.)  RG/2 has submitted its itemized invoices to the Court: (1) an invoice for $80,824 expenses incurred from January 1, 2020 to June 30, 2020, and (2) an invoice for $20,299 expenses incurred from July 1, 2020 to August 31, 2020.  (Dkt. 144 (Supp. Montague Decl.) ¶¶6-7, Exs. A-B.)  RG/2 has also submitted a breakdown of anticipated costs that will be incurred to complete its duties as settlement administrator, which totals $33,217.  (Id. at Ex. C.)  Based on RG/2's declarations and the evidence submitted, the Court awards administration expenses to RG/2 in the amount of $134,340 ($80,824 + $20,299 + $33,217), to be awarded from the settlement fund.

### D. Plaintiffs' Incentive Award

Plaintiffs request a cumulative incentive award of $7,500, which is approximately 0.22% of the $3.4 million settlement fund.  (Dkt. 106 at 1, 19.)  The Court has already concluded that a cumulative service award of $7,500 is appropriate.  (Dkt. 88 at 6-7.)  To date, neither Defendant nor any class member has objected to the $7,500 award proposed by the Court.  (Dkt. 106 at 19.)  This service award is consistent with payments made in similar actions.  See, e.g., Chao v. Aurora Loan Services, LLC, 2015 WL 294823, at *3 (N.D. Cal. Jan. 21, 2015) (approving incentive awards in the amount of $7,500 to each of the five class representatives of a RFDCPA action).  Based on Plaintiffs' briefing and evidence submitted, the Court finds an incentive award of $7,500 is reasonable.  The Court therefore grants Plaintiffs' request for a cumulative incentive payment of $7,500, to be awarded from the Settlement Fund.

### Conclusion

The Court grants Plaintiffs' Motions for (1) Final Approval of Proposed Class Action Settlement Agreement and Certification of Settlement Class, and (2) Attorney Fees and Costs and Award of Class Representatives Incentive Payment.  The Court will enter a judgment consistent with this order.[3/]

IT IS SO ORDERED.

---

[3/]   For the purpose of correcting a scrivenor's error in the Settlement Agreement, the Court hereby orders that any references in the Settlement Agreement to "Released Persons" means the defined term "Released Parties."  In addition, in granting Plaintiffs' Motions, the Court declines to incorporate the Settlement Agreement's terms concerning retention of jurisdiction over this action.  (See Dkt. 100-7 (Settlement Agreement) ¶¶60(g), 110.)  The Court also declines to "bar and enjoin Plaintiffs and all Settlement Class Members . . . from commencing, instituting, asserting, or continuing to prosecute any action or proceeding in any court . . . any of the Released Claims, as set forth in Section 11 [of the Settlement Agreement], against any of the Released Persons."  (Id. at ¶60(e).)